[No. 28973-0-I.   Division One.   July 26, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. ERVIN
GALBERT, *Appellant.*

*Neal John Philip* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Mark Stockdale, Deputy,* for respondent.

PEKELIS, A.C.J. — Ervin Galbert appeals his conviction for possession of cocaine. Galbert contends that the trial court erred in failing to suppress evidence seized pursuant to an unlawful frisk. We agree and reverse.

I

On January 15, 1991, Seattle police executed a search warrant at 1115 Yakima Avenue South, number 3. The search warrant instructed the officers to search the premises for narcotics, and it authorized the officers to seize: "[c]ocaine, other controlled substances, narcotics paraphernalia, records of sales of narcotics, packaging material to package narcotics, papers of dominion and control, weapons used to protect narcotics sales, money from the sale of narcotics."

Upon entering the residence Officer Joseph Parks found a man, later identified as Galbert, alone in the living room. Officer Parks told Galbert to lie face down on the ground, which Galbert did; the officer handcuffed Galbert's hands behind his back. Officer Parks then performed a "quick around the mid-section check to make sure there [were] no easily accessible weapon[s]." He found none. Officer Jackson

Lone found another person, Gwendolyn Kibby, in the rear bedroom of the house and handcuffed her. The officers also found Kibby's two small children.

Once the officers had the residence secured, they did another "walk through" to look for narcotics and other people. At this time Officer Lone noticed marijuana cigarettes and a foil pipe on the table "less than two feet" from Galbert. Officer Lone testified these were the only items he found during the "walk through" that indicated Galbert might be involved in criminal activity.

Officer Lone then returned to Galbert, stood him up, and performed a second frisk. Upon feeling "a lump"[1] in Galbert's front right pants pocket which Officer Lone "thought . . . could have been a weapon of some type", Officer Lone reached in Galbert's pants pocket and retrieved the object, which later proved to be rock cocaine. Galbert subsequently was arrested and charged with possession of cocaine.

Galbert moved to suppress the evidence as the fruit of an unconstitutional search. At the hearing, Officer Lone testified that he did not know prior to frisking Galbert whether Galbert was an occupant of or a visitor to the premises. He explained that, "[f]or officer safety reasons", it is normal procedure to handcuff all people immediately upon entering a house pursuant to a search warrant. According to Officer Lone, officer safety is an issue when entering homes during searches for narcotics because "[i]t is very common" to find weapons on the premises. Thus, the officers immediately handcuff everyone because "[t]he people, who are the residents, know where the possible weapons may be, and the officers ourselves going in don't know where they're going to be".

---

[1] Officer Lone testified that the "lump" was a "three inch by one inch lump," and that it was not as hard as a table. According to Officer Lone, "[g]uns now are extremely small, so it could have been an edged weapon and it could have been a gun of some type." The crime lab report proved the "lump" to be 12.3 grams of cocaine.

On cross examination, when asked to explain why he subjected Galbert to a second frisk, Officer Lone replied "to make sure there were no weapons missed in the initial search" and to check "for any contraband". When asked whether he had any reason to believe that Galbert could have possibly pulled a gun or knife on him while handcuffed, Officer Lone testified "[I]t depends. Some suspects are able to bring their hands all the way around to the side and actually get into their pockets." Officer Lone indicated that while instances of this occurring were less than "several", such instances had occurred.

Galbert also testified at the hearing. He claimed that he made no motions while handcuffed that would make someone think he was trying to retrieve a weapon, and that he did not have access to anything in his front pants pocket.

The trial judge found that because Galbert was not under arrest prior to either frisk, the search was not incident to arrest. Nonetheless, the judge found the search lawful because of Galbert's presence next to a table where there was contraband and the common experience of the officers "to find weapons in homes and in suspects' pockets when executing a search warrant". Consequently, the evidence was ruled admissible.

Following this determination, Galbert was found guilty of possessing cocaine. Galbert appeals.

## II

Galbert contends Officer Lone's frisk was illegal,[2] arguing that Officer Lone offered no "specific and articulable facts" to establish a reasonable suspicion that Galbert was armed and dangerous. Moreover, Galbert argues that any fear by the officers that he was armed and dangerous was unreasonable under the circumstances.

██ ██ Although probable cause is generally required to perform a search and seizure, under narrowly drawn and carefully circumscribed circumstances lesser cause suffices. *See Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct.

---

[2]Galbert did not challenge the legality of the first frisk conducted by Officer Parks, so that issue is not before this court.

1868 (1968); *State v. Broadnax*, 98 Wn.2d 289, 293-94, 654 P.2d 96 (1982). An officer may frisk a person for weapons if the officer has reasonable grounds to believe the person is armed and dangerous. *See Terry*; *Broadnax*. The officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968). "A 'generalized suspicion' is insufficient to justify a frisk", *State v. Sweet*, 44 Wn. App. 226, 234, 721 P.2d 560, *review denied*, 107 Wn.2d 1001 (1986), even when a person is present at a location the police are authorized to search by a valid warrant. *Ybarra v. Illinois*, 444 U.S. 85, 92-94, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979); *Broadnax*, 98 Wn.2d at 295.

In the case at bar, the State contends there were reasonable grounds to refrisk Galbert based on the trial court's adoption of Officer Lone's testimony that it is "very common" to find weapons in homes for which narcotics warrants have been issued. Furthermore, the State argues, officer safety concerns justified a second frisk because Galbert could have reached into his pockets and retrieved a weapon.

We note first that the trial court made no finding that Galbert posed a threat to Officer Lone. Galbert had already been frisked by Officer Parks. There is nothing in the record to suggest that the first frisk was not sufficient. Moreover, Officer Lone never testified that, despite Officer Parks' initial frisk and Galbert being handcuffed lying prone on his face on the floor, there was reason to fear Galbert was armed and "presently dangerous to the officer or to others". *Terry*, 392 U.S. at 24. In fact, the record would not support such a claim. There is no evidence that Galbert made any gestures or threats that would have led the officers to believe that he was presently dangerous, and it is not likely that Galbert could have done so while handcuffed and lying prone on his face on the floor. Galbert testified that he never made any surreptitious movements, and that while handcuffed he could not reach his front pants pocket even if he wanted to.

Moreover, other factors indicate that Galbert was not armed and dangerous: Galbert did not ignore the officer's request to get down on the ground; he did not flee when the officer approached; and there is no evidence that his clothing could have facilitated concealing a weapon. *See State v. Walker,* 66 Wn. App. 622, 631, 834 P.2d 41 (1992) (listing factors).

Given the total absence of evidence that Galbert made any sign that conceivably could have been interpreted as an attempt to retrieve a weapon, any safety concern based on the fear that he would do so lacked an objective basis and hence was unreasonable. Thus, we hold that the second frisk by Officer Lone and subsequent search was not authorized by *Terry* and was therefore constitutionally invalid.[3]

## III

As an alternative basis for affirming the trial court, the State argues that the search can be justified as incident to a lawful arrest.

A search incident to a lawful arrest is an exception to the general warrant requirement. *State v. Carner,* 28 Wn. App. 439, 444, 624 P.2d 204 (1981). Probable cause to arrest without a warrant exists when:

> [A]n officer has reasonable grounds to believe a suspect has committed or is committing a crime based on circumstances sufficiently strong to warrant that conclusion. The test is one of reasonableness, considering the time, place, and circumstances and the officer's special expertise in identifying criminal behavior.

*State v. Gonzales,* 46 Wn. App. 388, 395, 731 P.2d 1101 (1986); *State v. Dorsey,* 40 Wn. App. 459, 468-69, 698 P.2d 1109, *review denied,* 104 Wn.2d 1010 (1985).

The State argues that Galbert's presence in the house and proximity to the marijuana sufficiently associate him with the drugs to justify an arrest. However, the *Broadnax*

---

[3]The State offers no authority for its additional contention that Galbert's proximity to the marijuana and foil pipe demonstrates the officer's reasonable belief that Galbert was armed and dangerous. This contention, on its face, has no reasonable basis. *See Sibron,* 392 U.S. at 62-64 (mere act of talking to known narcotics addicts over 8-hour period does not justify a weapons frisk).

court rejected "mere presence" as a sufficient condition to justify a search. There, police obtained a warrant to search a premises for narcotics. *Broadnax*, 98 Wn.2d at 291. Once inside, an officer frisked Broadnax, felt a small bulge in his shirt pocket, retrieved it and discovered it was heroin. *Broadnax*, at 293. Shortly, another officer discovered controlled substances in a bedroom. *Broadnax*, at 293. The court observed that nothing directly related petitioner to the drugs in the bedroom "other than his 'mere presence' within the house." *Broadnax*, at 303. Therefore, the court held that the officers did not have probable cause to arrest Galbert on that basis.[4]

Here, though, Officer Lone testified that, prior to frisking Galbert, he saw the marijuana and foil pipe on a living room table less than 2 feet away from Galbert. Thus, the State argues that Galbert had constructive possession of the marijuana. In general, constructive possession is established when a defendant has dominion and control over either the drug or the premises where the drug is found. *State v. Callahan*, 77 Wn.2d 27, 30-31, 459 P.2d 400 (1969); *State v. Spruell*, 57 Wn. App. 383, 385, 788 P.2d 21 (1990).

The State conceded at oral argument that the only evidence relevant to dominion and control over the premises was Galbert's testimony that he had been asleep prior to the officers' entry. At best this shows temporary residence, which is insufficient to establish constructive possession. *See State v. Davis*, 16 Wn. App. 657, 659, 558 P.2d 263 (1977) (temporary residence, the existence of personal possessions on the premises, or knowledge of the presence of drugs do not prove constructive possession). Accordingly, there was not probable cause to arrest based on Galbert's dominion and control over the premises.

---

[4]The State also contends the search warrant established probable cause to believe narcotics transactions were occurring on the premises. However, a search warrant does not establish probable cause to arrest. *See Broadnax*, 98 Wn.2d at 303 (even though the narcotics search warrant gave the officers a "reasonable belief" that drug trafficking was occurring, "such beliefs cannot be equated with the individualized probable cause necessary to justify an arrest and search incident thereto.").

Moreover, there is no evidence that Galbert had dominion and control over the marijuana. The State conceded at oral argument that no evidence placed Galbert in close proximity to the marijuana *before* the officers entered the house. Galbert could have been sleeping in a bedroom, heard the knock, and come into the living room just as the officers entered. Further, there is no evidence that Galbert's location at the time of Officer Lone's frisk of Galbert (when he first noticed the marijuana on the table close to Galbert) was the same as Galbert's location when the officers first saw him. In short, there is no evidence that Galbert was close to the marijuana either prior to the officers' entry or when the officers first saw him.

■ Finally, even if we characterize the marijuana as having been in close proximity to Galbert, mere proximity to drugs is not enough to establish constructive possession. *See State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971); *Spruell*, at 389. In *Spruell*, officers entered a house and found one defendant seated at the kitchen table on which there was cocaine residue and a small scale; Hill, another defendant, was standing next to the table. *Spruell*, 57 Wn. App. at 384. A fingerprint of Hill's was found on a plate which evidence indicated had contained cocaine moments prior to the officers' entry. *Spruell*, at 384. The court held this evidence insufficient to establish dominion and control over the drugs because "mere proximity to the drugs and evidence of momentary handling is not enough to support a finding of constructive possession." *Spruell*, at 388.

Here, the evidence supporting the State's claim of Galbert's dominion and control over the marijuana is even weaker than in *Spruell*. There is no evidence *beyond* presence and proximity from which one could reasonably infer dominion and control over the drugs themselves. The officers did not testify that they smelled the odor of marijuana or that Galbert was under the influence, circumstances which can constitute evidence of illegal activity. *Cf. State v. Haggarty*, 20 Wn. App. 335, 579 P.2d 1031 (1978) (ample grounds to arrest where officers noticed the odor of fresh marijuana smoke, marijuana residue

was within arm's reach of defendant, and defendant was under the influence of marijuana), *review denied*, 91 Wn.2d 1011 (1979). Thus, there was not probable cause to arrest Galbert based on constructive possession of the marijuana.

In conclusion, neither the trial court's findings of fact nor the evidence adduced at the suppression hearing justifies Officer Lone's refrisk and subsequent search of Galbert. First, Officer Lone did not state that he had a reasonable suspicion that Galbert was armed and presently dangerous; the evidence shows that Galbert was handcuffed while lying face down on the floor, and that he never made a gesture conceivably construed as attempting to retrieve a weapon. Second, the evidence is insufficient to establish a reasonable belief that Galbert had dominion and control of the residence or the marijuana; therefore, the arrest was not supported by probable cause to arrest. Accordingly, we hold that the search of Galbert cannot be justified as a *Terry* frisk or a search incident to arrest.

Reversed and dismissed.

GROSSE and AGID, JJ., concur.