[No. 16461-6-III. Division Three. January 26, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY WILLIAM LENNON, *Appellant*.

*Evan L. Loeffler* of *Harrison, Benis & Spence, L.L.P.*; and *George M. Ahrend*, for appellant.

*John D. Knodell III, Prosecuting Attorney,* and *Carolyn J. Fair, Deputy,* for respondent.

SCHULTHEIS, C.J. — Jeffrey Lennon was convicted of one count of possession of cocaine and one count of bail jumping. His appeal was delayed about 10 months by the court reporter's failure to transcribe the report of proceedings. He first moves for reversal of his conviction and dismissal of the charges based on a violation of his speedy appeal rights. Additionally, he contends he was subjected to an unlawful search. We reverse and dismiss.

## FACTS

On June 7, 1996, police executed a search warrant for narcotics at a Motel 6 room in Moses Lake. Throughout the nearly three-hour search, people called the room, paged occupant Rick Garza or came to the door—all apparently seeking cocaine. At one point Mr. Lennon knocked at the door and asked if Rick was home. Detective Dave Ponozzo, an old acquaintance of Mr. Lennon, asked him to come in. Mr. Lennon entered with a beer in his hand. The officers took the beer away from him and immediately patted him down. Detective Ponozzo felt a long cylindrical object in Mr. Lennon's right rear pocket, removed it and discovered it was a pipe containing residue. The left rear pocket was found to contain a tablespoon with burn marks and residue. Lab tests revealed that the residue on both objects was cocaine. The detective also removed from the left pocket a small container filled with a white powder that was later determined to be baking soda (used to "cut" narcotics or to manufacture crack cocaine). All these items

were seized as drug paraphernalia and Mr. Lennon was arrested for possession of cocaine.

Before trial, Mr. Lennon moved for exclusion of the drug paraphernalia as the fruit of an illegal search. Based on the officers' testimony that they usually find a weapon at the residence when they execute a search warrant, the trial court concluded that the search was for officer safety and ordered the evidence admitted at trial. Mr. Lennon—a car mechanic—testified at trial that he was fixing Mr. Garza's car and discovered the drug paraphernalia in it. He claimed he was returning the items to Mr. Garza when the police searched him. The jury found him guilty of possession of cocaine and bail jumping (based on an earlier failure to appear).

Mr. Lennon filed his notice of appeal in February 1997. He ordered a transcript of the report of proceedings on March 28, 1997. In June, the Clerk of the Court of Appeals wrote the court reporter and warned of sanctions if the transcript was not soon filed. The reporter's request for an extension of the time period was granted in July 1997. Mr. Lennon's counsel wrote this court in late July and complained that the court reporter had not met the extension date. The court reporter then requested and received another extension, and this deadline also was not met. In September 1997, this court warned it would impose terms if the transcript were not received by September 22. Later that deadline was extended by a Commissioner's Ruling to November 14. Mr. Lennon moved to reverse the judgment and grant a new trial in October 1997 based on the insufficient record. The transcript was finally filed on January 13, 1998, and the motion to reverse was denied in a Commissioner's Ruling the next day as moot. An order imposing sanctions of $100 against the court reporter was filed in February 1998.

SPEEDY APPEAL

Preliminarily, Mr. Lennon moves to reverse his convic-

tion and dismiss the charges based on the delay in the preparation of the report of proceedings. He contends the 10-month delay violated federal due process and state constitutional guaranties of a speedy appeal.

 The United States Constitution does not require the states to provide convicted defendants a right to appellate review. *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980), *cert. denied*, 450 U.S. 931 (1981); *People v. Sistrunk*, 259 Ill. App. 3d 40, 53, 630 N.E.2d 1213, 197 Ill. Dec. 89 (1994). While the right to a speedy appeal is not contemplated in the Sixth Amendment, federal courts have held that undue delay in processing an appeal may rise to the level of a violation of due process. *United States v. Smith*, 94 F.3d 204, 206-07 (6th Cir. 1996), *cert. denied*, 519 U.S. 1133 (1997); *United States v. Johnson*, 732 F.2d 379, 381 (4th Cir.), *cert. denied*, 469 U.S. 1033 (1984). Mr. Lennon contends the Washington State Constitution provides broader protection than the federal constitution and examines the six factors of *State v. Gunwall*[1] to show that article I, section 10 (the right to justice "without unnecessary delay") and article I, section 22 (the right to appeal) create a state constitutional right to a speedy appeal. We need not consider the *Gunwall* factors here. It is already established that when a state has provided a constitutional right to appeal and has established appellate courts as an integral part of the criminal justice system, an appeal must comport with due process. *Smith*, 94 F.3d at 206-07; *Rheuark*, 628 F.2d at 302. Washington guarantees the right to appeal criminal prosecutions, and substantial delay in the appellate process may constitute a due process violation. WASH. CONST. art. I, § 22; *Coe v. Thurman*, 922 F.2d 528, 530 (9th Cir. 1990).

To determine whether an inordinate delay denies due process, most courts have adopted a modified version of the test formulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), analogizing to the viola-

---

[1]106 Wn.2d 54, 62-63, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

tion of speedy trial rights. *Rheuark*, 628 F.2d at 303; *Allen v. State*, 686 N.E.2d 760, 783 (Ind. 1997), *cert. denied*, 119 S. Ct. 807 (1999). The four-prong test examines the length of the delay, the reason for the delay, the defendant's diligence in pursuing the right to appeal, and the prejudice to the defendant. *Barker*, 407 U.S. at 530; *Coe*, 922 F.2d at 531-32; *Rheuark*, 628 F.2d at 303. The length of the delay acts as a triggering mechanism, meaning that unless the delay is unreasonable under the circumstances, there is no necessity to inquire further. *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992); *Barker*, 407 U.S. at 530. In extreme circumstances, an inordinate delay may give rise to a presumption of prejudice. *Doggett*, 505 U.S. at 655-57, *cited in Smith*, 94 F.3d at 209.

On balance, Mr. Lennon's case falls short of a due process violation. The 10-month delay here, far from an extreme case, is not on its face unreasonable. *Compare* cases cited in *Smith*, 94 F.3d at 209 (delays ranging from 2 years to 13 years). Further, the reason for the delay—the court reporter's unexplained procrastination—was not the fault of the State or this court, which frequently warned and sanctioned the court reporter to little effect. Mr. Lennon's efforts to pursue his appeal, including his motion to dismiss when the report of proceedings was not forthcoming, weigh in his favor under the third *Barker* factor. Most important to the outcome here, however, is the fact that Mr. Lennon fails to show that his appeal was prejudiced by this delay.

Washington courts have not addressed the due process standards for delayed appeals, but it is clear that the primary consideration will always be the degree to which a defendant is prejudiced by the delay. *See United States v. Hawkins*, 78 F.3d 348, 351 (8th Cir.) (while no one factor is determinative, no due process violation can be established absent a showing of prejudice), *cert. denied*, 519 U.S. 844 (1996). The question of prejudice concerns three interests of a convicted defendant seeking a prompt appeal: (1) to

prevent oppressive incarceration pending review; (2) to minimize the defendant's anxiety and concern; and (3) to limit the possibility that the grounds for the appeal or the defenses in the case of a retrial might be impaired. *Barker,* 407 U.S. at 532; *Smith,* 94 F.3d at 207; *Johnson,* 732 F.2d at 382; *Rheuark,* 628 F.2d at 303 n.8.

Mr. Lennon's arguments for prejudice here are that he was subjected to oppressive incarceration during the delay and effectively lost his right to appeal because he had served nearly all of his sentence by the time the transcript was prepared. Unlike the defendant arguing a violation of speedy trial rights, however, Mr. Lennon has already stood trial and was found guilty. His incarceration during the appeal does not require the same degree of consideration as the Sixth Amendment imposes on the period between arrest and trial. *See State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208, 1226 (1983). It is not unusual for appellants to serve their entire sentences before their appeals are heard. Without more, he cannot show the degree of prejudice necessary to trigger due process protection.

### FRISK FOR OFFICER SAFETY

The substantive issue raised in Mr. Lennon's appeal is his insistence that the trial court erred in admitting the drug paraphernalia discovered during the pat down. He contends the frisk was not justified for officer safety under these circumstances. We agree.

██ Under the Fourth Amendment and article I, section 7 of the Washington Constitution, a warrantless search is per se unreasonable. *State v. Miller,* 91 Wn. App. 181, 184, 955 P.2d 810 (citing *State v. Williams,* 102 Wn.2d 733, 736, 689 P.2d 1065 (1984)), *review denied,* 136 Wn.2d 1016 (1998). One exception to the warrant requirement is the protective frisk that accompanies a *"Terry* stop." *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Smith,* 102 Wn.2d 449, 452, 688 P.2d 146 (1984); *State v. Laskowski,* 88 Wn. App. 858, 860, 950 P.2d 950

(1997), *review denied*, 135 Wn.2d 1002 (1998). A *Terry* stop-and-frisk is justified when (1) the initial stop is legitimate; (2) there is a reasonable safety concern justifying a protective frisk for weapons; and (3) the scope of the frisk is limited to the protective purposes. *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993). In the case before us, Mr. Lennon challenges only the second element of the *Terry* test, contending the officers had no reasonable basis for believing he was armed and dangerous.[2]

A protective frisk is justified only when the officer can point to "specific and articulable facts" that create an objective, reasonable belief that the suspect is armed and dangerous. *Terry*, 392 U.S. at 21-22; *Collins*, 121 Wn.2d at 173. Generally courts are reluctant to second-guess the judgment of officers in the field and will uphold the validity of most frisks that arise from a "founded suspicion" that is neither arbitrary nor harassing. *Collins*, 121 Wn.2d at 173. The suspicion must be founded, however, on facts specific to the individual suspect. "Generalized suspicion" is insufficient to justify a frisk, even when the person is present at the location where the police are authorized by warrant to search. *State v. Galbert*, 70 Wn. App. 721, 725, 855 P.2d 310 (1993) (quoting *State v. Sweet*, 44 Wn. App. 226, 234, 721 P.2d 560, *review denied*, 107 Wn.2d 1001 (1986) and citing *Ybarra v. Illinois*, 444 U.S. 85, 92-94, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979)). Further, a person's mere proximity to a suspect independently suspected of criminal activity will not strip away Fourth Amendment protections. *State v. Broadnax*, 98 Wn.2d 289, 296, 654 P.2d 96 (1982).

Here the trial court made no finding that the officers felt threatened by any gesture or word from Mr. Lennon. As in *Galbert*, 70 Wn. App. at 725, the officers testified that they commonly found weapons on the premises searched for narcotics. Not only is this fact irrelevant to the question of

---

[2]We note that, while executing a search warrant, police are justified in stopping anyone arriving at the scene so as to determine whether that person may interfere with the search and what business that person has on the scene. *State v. Galloway*, 14 Wn. App. 200, 201, 540 P.2d 444, *review denied*, 86 Wn.2d 1006 (1975).

Mr. Lennon's dangerousness, but it is irrelevant to the dangerousness of any person who happens to arrive at the site of an authorized search after the search has begun. The *Galbert* court ignored the police officers' generalized suspicion and noted other factors indicating Mr. Galbert was not armed or dangerous, including the facts that he did not ignore the officers or flee and did not wear clothing that could have facilitated concealing a weapon. *Id.* at 726.

Similar facts face us here. According to the police testimony, Mr. Lennon arrived at the room with a can of beer in his hand, asked for Rick and accepted the invitation to enter from a known officer. Nothing in the record indicates he appeared nervous, tried to flee or made furtive gestures. *Williams*, 102 Wn.2d at 740. *Compare Miller*, 91 Wn. App. at 185 (suspicions aroused when the person attempted to flee and refused to turn around and remove his hands from his pockets); *Laskowski*, 88 Wn. App. at 859 (person frisked appeared nervous, wore a backpack capable of concealing a weapon and was with a companion who had a shotgun shell); *and State v. Galloway*, 14 Wn. App. 200, 201-02, 540 P.2d 444, *review denied*, 86 Wn.2d 1006 (1975) (person who arrived at the residence during a lawful search appeared nervous and kept his right hand in his overcoat pocket). The State's argument on appeal that the officers probably knew Mr. Lennon had been convicted of a felony (felonious taking of a vehicle) is specious. No officer testified to that knowledge or claimed the decision to frisk was based on such knowledge. In short, there are simply no facts to support an individualized suspicion that Mr. Lennon was armed or presently dangerous. Consequently, the frisk was unconstitutional and the trial court erred in admitting the evidence discovered. *State v. Terrazas*, 71 Wn. App. 873, 879, 863 P.2d 75 (1993), *review denied*, 123 Wn.2d 1028 (1994); *Galbert*, 70 Wn. App. at 726.

■ The State's argument that the frisk was justified as a search incident to an arrest based on probable cause is also without merit. In essence, the State contends the improbable story given by Mr. Lennon <u>after</u> he was frisked

supported probable cause to arrest and search him. This circular reasoning is not deserving of comment.

Reversed and dismissed.

SWEENEY and KATO, JJ., concur.

Reconsideration denied March 23, 1999.

Review denied at 138 Wn.2d 1014 (1999).