[No. 20590-8-III.    Division Three.    May 29, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN D. MACKEY, *Appellant*.

*Kenneth D. Beckley*, for appellant.

*Gregory L. Zempel, Prosecuting Attorney*, and *Margaret A.P. Sowards, Deputy*, for respondent.

SWEENEY, J. — This drug case turns on the propriety of a police search of a fanny pack. Police may not search without probable cause. *State v. Goodman*, 42 Wn. App. 331, 336, 711 P.2d 1057 (1985). They may, however, conduct a limited "*Terry* search" for weapons, given a "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 29-30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Broadnax*, 98 Wn.2d 289, 296, 654 P.2d 96 (1982). But consent is a well-recognized exception to either of these requirements. Here, the trial judge found, in an unchallenged finding of fact, that Brian D. Mackey consented to this search. We therefore affirm his conviction.

## FACTS

On March 22, 2001, Washington State Patrol Trooper Donovan Daly saw Mr. Mackey's car change lanes without signaling on Interstate 90 in Kittitas County. Trooper Daly followed. Mr. Mackey's car drifted across the left yellow line. It then drifted across the right lane divider. Trooper Daly stopped the car. The car traveled an unusually long distance before coming to a stop. Trooper Daly saw "a lot of movement" inside the car by both the driver and passenger. Clerk's Papers (CP) at 11.

He approached the car from the passenger side and "was immediately met with a strong odor of intoxicants from the car." CP at 12. The passenger reported he had been drinking. Mr. Mackey's eyes were watery and bloodshot. The trooper asked for Mr. Mackey's driver's license, registration, and proof of insurance. Mr. Mackey had difficulty extracting the documents from his wallet.

Trooper Daly asked Mr. Mackey to meet him at the rear of the car. Mr. Mackey got out of the car. Trooper Daly saw a fanny pack hanging from Mr. Mackey's waist. It appeared to be "puffed out" or full. CP at 31. The fanny pack was like the one that the trooper carried his own weapon in. And he had seen others carry weapons in similar fanny packs. So the trooper was concerned.

Trooper Daly asked Mr. Mackey if he had any guns. Mr. Mackey said that he did not. The trooper asked Mr. Mackey if he minded if he checked the fanny pack for officer safety. Mr. Mackey responded, "I guess not." CP at 13. Mr. Mackey then opened the pack and exposed drugs and paraphernalia.

Mr. Mackey and the passenger both testified that Trooper Daly first felt the fanny pack and unzipped it as he asked to look inside. And Mr. Mackey said, "I guess not" sarcastically in response to the trooper's opening the fanny pack and looking inside.

But the trial judge found otherwise. The judge found this version was "incredulous" because taking the fanny pack in

the manner suggested by Mr. Mackey and the passenger would be "completely contrary to police procedure and would place Trooper Daly in greater peril." CP at 82. Mr. Mackey does not challenge that finding.

Mr. Mackey was ultimately convicted, as charged, for possession of cocaine, possession of less than 40 grams of marijuana, and unlawful use of drug paraphernalia.

## DISCUSSION

We review a trial court's factual findings for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We review de novo the trial court's conclusions of law. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999).

Mr. Mackey first challenges the court's finding 6: that Trooper Daly's intent when he got Mr. Mackey out of the car was to determine whether Mr. Mackey smelled of alcohol and to determine whether Mr. Mackey was driving under the influence. CP at 81.

The court found that the trooper stopped Mr. Mackey because of poor driving. The smell of alcohol emanated from the car. The trooper could not tell whether the smell came from the passenger or the driver. Mr. Mackey also had watery, bloodshot eyes and fumbled in his wallet. These findings are amply supported by this record and give rise to a reasonable and articulable suspicion that Mr. Mackey was driving while under the influence. "Indications of intoxication can include coordination problems, an odor of alcohol, slurred speech, bloodshot eyes, flushed face, and disarrayed clothing." 13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 809, at 158 n.18 (1998).

Mr. Mackey agrees that his driving performance reasonably warranted the traffic stop. But he argues that the trooper's request that he get out of the car and walk to the rear was not necessary to further the investigation.

The permissible scope and duration of a detention is limited to the purpose of the traffic stop absent "increas-

ingly suspicious circumstances." *State v. Gonzales*, 46 Wn. App. 388, 395, 731 P.2d 1101 (1986). Its scope is a function of: (1) the purpose of the stop, (2) the amount of physical intrusion on the suspect's liberty, and (3) the length of time of the seizure. *Id.* at 394.

The means of investigation need not be the least intrusive available. But police must reasonably try to identify and pursue less intrusive alternatives. *United States v. Sharpe*, 470 U.S. 675, 687, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); *State v. Johnston*, 38 Wn. App. 793, 798-99, 690 P.2d 591 (1984).

■ Here, the trooper stopped Mr. Mackey for a traffic infraction for drifting out of his lane. He spoke with Mr. Mackey and smelled alcohol. Mr. Mackey fumbled with his wallet. Having Mr. Mackey get out of the car was then an acceptable intrusion under these circumstances. It is in fact the standard practice. *See, e.g., State v. Takesgun*, 89 Wn. App. 608, 609-10, 949 P.2d 845 (1998); *Williams v. Dep't of Licensing*, 85 Wn. App. 271, 274-75, 932 P.2d 665 (1997). Here, the stop was not lengthy. And removing Mr. Mackey from the car to determine the source of the alcohol smell is not overly intrusive.

Mr. Mackey next challenges the court's determination that Trooper Daly had "a reasonable belief that [Mr.] Mackey may be armed and dangerous and was justified in conducting a limited search of the fanny pack for weapons." CP at 83.

■ "An officer who properly stops a car may conduct a search for weapons within the immediate control of the driver and passengers when one of the persons in the car moves as if to hide a weapon." *State v. Wilkinson*, 56 Wn. App. 812, 815, 785 P.2d 1139 (1990).

> In the context of an admittedly valid stop, any reasonable basis supporting an inference that the investigatee or a companion is armed will justify a protective search for weapons. " 'A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.' "

*Id*. at 818 (emphasis omitted) (quoting *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966))).

■ But here, the trial judge found that Mr. Mackey exposed the contents of the fanny pack before any search took place. The propriety of the search, its justification, and its scope is then irrelevant. *See, e.g., State v. Rodriguez*, 65 Wn. App. 409, 416, 828 P.2d 636 (1992). Mr. Mackey consented to the search. The court's findings here amply support that conclusion: "Before he could frisk the pack, [Mr.] Mackey voluntarily opened it and Trooper Daly saw what was in plain view for him to see." CP at 83. This was then consent by Mr. Mackey to view what was in this pack. *See State v. Lund*, 70 Wn. App. 437, 443 n.4, 853 P.2d 1379 (1993).

The motion to suppress was properly denied. And we affirm Mr. Mackey's convictions.

KATO, A.C.J., concurs.

SCHULTHEIS, J. (concurring) — The facts of this case are troublesome. I agree with the majority that the initial traffic stop was proper, as was the trooper's request that Brian Mackey step out of the car so the suspicion of driving under the influence could be further investigated. However, under the specific facts of this case, my plenary agreement stops at that point. I am uncomfortable with the court's determination that the trooper had a reasonable suspicion that Mr. Mackey was presently armed and dangerous that justified a search for weapons in the fanny pack attached to his waist. Our law enforcement officers must make immediate judgment calls while on duty and it is all too easy to criticize their thought processes after the fact. I was perfectly comfortable with the trooper's decision to conduct a pat-down of Mr. Mackey for weapons due to the fact the trooper was alone on the side of the road in the dark and outnumbered by suspects who made unidentifiable movements inside the car prior to stopping. However, when the

trooper testified his decision to search Mr. Mackey's fanny pack was based in part on the trooper's personal choice to keep his own weapon in a fanny pack, my comfort level dwindled. As found in *State v. Lennon*, 94 Wn. App. 573, 580, 976 P.2d 121 (1999), an officer's generalized suspicion, without more, that criminal activity is occurring is insufficient to justify a frisk for weapons. As applied to this case, the rule set forth in *Lennon* would prohibit the trooper's conclusion that fanny packs necessarily contain concealed weapons. For this reason, I am not comfortable with the trial court's conclusion that the wearing of a fanny pack is "commonly associated with concealment of weapons."[1] Nevertheless, on balance, I would agree with the trial court's decision (and the majority's approval) the trooper had reason to pat Mr. Mackey down for weapons.

However, I write separately to voice my concern about the enormous conflict between the trooper's testimony regarding the resultant search of the fanny pack, which was attached to Mr. Mackey's waist, and the testimony of the only other two witnesses to the trooper's words and actions—Mr. Mackey and his brother. The trooper testified Mr. Mackey willingly opened the fanny pack for him upon request and that the illegal drugs were immediately seen in plain view inside the fanny pack. Mr. Mackey and his brother, on the other hand, both testified the trooper grabbed the fanny pack and began to unzip it while asking Mr. Mackey for his permission to do so. Mr. Mackey testified he sarcastically agreed to the trooper's request because it was a moot point, as the bag had already been opened by the trooper before he could answer. These are the facts with which I am disturbed. I take this opportunity to remind law enforcement officers it is vital that they follow the strict constitutional safeguards that have been in place for 35 years when conducting a *Terry*[2] stop pat-down for weapons.

In conclusion, the trial court determined the trooper's testimony was more credible than that of Mr. Mackey and

---

[1] Clerk's Papers at 83.

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

his brother and I am constrained to follow that credibility determination.[3] For this reason I must agree with the majority decision that the court's conclusion of law 3 was supported by facts in the record.

Motions for reconsideration denied October 24, 2003.

---

[3] *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).