# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58750-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ANDRE M. DUMMER, | |
| Appellant. | |

CHE, J. — Andre M. Dummer appeals his convictions for unlawful possession of a stolen vehicle, making or possessing motor vehicle theft tools, and obstruction of a law enforcement officer. Dummer, with drug paraphernalia in his lap, appeared to be asleep or passed out in a car that returned as possibly stolen. Deputies approached the car with their weapons drawn and ordered Dummer to show his hands. Ultimately, he did not comply and reached towards his seat and the ignition. The deputies grabbed his arms and pulled him from the car while he resisted their efforts. The deputies handcuffed Dummer and searched him for weapons.

On appeal, Dummer argues that the deputies exceeded the scope of a proper *Terry*[1] detention when they pulled him out of the car and handcuffed him, and that their detention of Dummer constituted an unlawful warrantless arrest. Dummer further argues that at the point this alleged arrest occurred, the police lacked probable cause and therefore the deputies lacked the authority of law to search his person. Accordingly, Dummer contends that the trial court erred in

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

not suppressing the evidence that was collected during the search of his person and that his convictions should be reversed as a result.

We hold (1) that Dummer was subjected to a *Terry* detention at the time of the search of his person, not a custodial arrest, (2) that the frisk of Dummer's person did not exceed the lawful scope of a *Terry* frisk, and (3) that even if Dummer had been subjected to a custodial arrest at the time he was pulled out of the car and handcuffed, the arrest was supported by probable cause for obstructing a law enforcement officer and the ensuing search of Dummer's person was a lawful search incident to arrest. Accordingly, we affirm Dummer's convictions. But we remand for the trial court to strike the crime victim penalty assessment (VPA) from his judgment and sentence.

FACTS

I. BACKGROUND

In September 2022, Pierce County Deputy Sheriff Amandla Gregory was on patrol and observed a car parked on the side of the road in which the driver appeared to be passed out. Deputy Gregory, based in part on the fact that it was around 8:30 a.m. and the sun was out, suspected that the person might be under the influence or impaired. Deputy Gregory ran the license plate and learned the license plate had been cancelled and the registration had expired. Deputy Gregory also learned that the car was possibly stolen. The person behind the wheel was later identified as Dummer. Deputy Gregory called for assistance to reduce the safety risk and reduce the risk of Dummer fleeing because it would have presented a risk to the public.

Deputy Hugh Oake arrived to assist. Deputy Oake observed the car had no front license plate and a piece of paper partially covered the vehicle identification number in the front windshield area. Both deputies observed a lighter and a piece of foil with black burn marks on

Dummer's lap.[2] Deputy Oake was concerned for the public's safety as Dummer may have been in physical control of the vehicle.

Deputy Gregory opened the driver side door and identified himself as a Pierce County Sheriff's deputy. The deputies had their weapons drawn in a low ready position and ordered Dummer to show his hands. Dummer momentarily showed his hands. Then, Dummer started reaching down with his right hand toward the seat, including under the driver's seat and towards the ignition area despite the deputies' commands to stop. The deputies were concerned that Dummer could be reaching for a weapon or for the ignition.

The deputies forcefully pulled Dummer from the car and handcuffed him while he resisted their efforts. Deputy Gregory explained that they placed Dummer in handcuffs because they were investigating a possible stolen vehicle and Dummer was not complying with the deputies' commands. The deputies found a knife on Dummer. The deputies then searched Dummer further for possible weapons, finding a variety of miscellaneous items, including a lanyard with multiple attached keys, a tool that could be used break windows and "punch locks," and a wallet with multiple IDs. 1 Rept. of Proc. (Mar. 21, 2023) at 61. Then, the deputies received confirmation the car was stolen.

## II. PROCEDURAL HISTORY

The State charged Dummer with unlawful possession of a stolen vehicle, obstructing a law enforcement officer, and making or possessing motor vehicle theft tools. Dummer moved to

---

[2] Tinfoil is used as a heat conductor in preparing certain drugs, including methamphetamine and heroin.

suppress "all evidence and statements obtained as result of an unlawful search and seizure."

Clerk's Papers (CP) at 13.

At the CrR 3.6 hearing to suppress evidence, Deputies Gregory and Oake testified consistently with the facts above. The trial court ruled that the deputies conducted a *Terry* detention of Dummer and that they had lawful grounds to perform the detention.[3] In its CrR 3.6 order, the court entered unchallenged findings of fact. It also made the following legal conclusions:

> d.      The deputies did not exceed the scope of a valid *Terry* detention when they contacted [Dummer] with drawn firearms based on the facts surrounding [Dummer] located in a reported possible stolen vehicle.
>
> e.      The deputies did not exceed the scope of a valid *Terry* detention when they forcibly removed the Defendant from the [car] based on the risk of [Dummer] attempting to drive away in a stolen vehicle or driving away when possibly under the influence of drugs.
>
> f.      The deputies had probable cause to arrest [Dummer] for the crime of obstructing a law enforcement officer after [Dummer] did not comply with their continued commands for him to stop reaching with his hand and after [Dummer] physically resisted the deputies' attempts to remove him from the [car].
>
> g.      The deputies did not exceed the scope of a valid *Terry* detention when they handcuffed [Dummer] after he had not complied with their commands and physically struggled with them.
>
> h.      The deputies' initial search of [Dummer] that resulted in them finding a knife was a valid Terry weapons search.

CP at 84.

---

[3] The trial court did not *expressly* conclude that the deputies' actions in pulling Dummer out of the car and handcuffing him was not a custodial arrest, as Dummer argued, but that conclusion is fairly implied by the trial court's conclusions that the deputies did not exceed the scope of a valid *Terry* detention. *See* Conclusions of Law (d), (e), (g), and (h).

The trial court denied Dummer's motion to suppress. Ultimately, a jury convicted Dummer of the charged crimes. In response to Dummer's concern about his ability to pay legal financial obligations (LFOs), the trial court imposed only the $500 VPA, but did not check the box indicating that Dummer was indigent. Dummer appeals.

ANALYSIS

I. THE DEPUTIES' ACTIONS IN PULLING DUMMER FROM THE CAR AND HANDCUFFING HIM WAS A TERRY DETENTION, NOT A CUSTODIAL ARREST

Dummer argues that when the deputies pulled him out of the car and handcuffed him it was an arrest rather than a *Terry* detention, and that this arrest was unsupported by probable cause. As a result, Dummer argues the search of his person was not justified under any exception to the warrant requirement and the evidence discovered during that search should have been suppressed. We conclude that the deputies initiated a *Terry* detention, not an arrest, and that the search of Dummer's person did not exceed the lawful scope of a *Terry* frisk. In the alternative, the officers' acts of seizing the knife and searching Dummer was justified under the search incident to arrest doctrine.

When reviewing suppression decisions, we review the challenged findings for substantial evidence and then whether those findings support the conclusions of law de novo. *State v. Alexander*, 5 Wn. App. 2d 154, 159, 425 P.3d 920 (2018). We treat unchallenged factual findings as verities. *Id*.

"Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, an officer generally may not seize a person without a warrant." *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017). However, there are a number of exceptions to the warrant requirement—including the *Terry* investigative stop. *Id.* The State

bears the burden to show that the warrantless search or seizure falls into an applicable exception. *Id.*

Under *Terry*, if the officer has reasonable suspicion that a person is or is about to engage in criminal activity, the officer may briefly detain the person for questioning without first obtaining a warrant. *Id.* "An officer may also briefly frisk the person if the officer has reasonable safety concerns to justify the protective frisk." *Id.*

It is not disputed that the deputies in this case had reasonable suspicions justifying the *Terry* stop. But the issue is whether the deputies exceed the permissible scope of a limited *Terry* detention. To that end,

> "A lawful *Terry* stop is limited in scope and duration to fulfilling the investigative purpose of the stop." Similar to the analysis for determining the validity of the stop, the proper scope of a *Terry* stop depends on "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." If the initial investigation dispels the officer's suspicions, the stop must end. But if it confirms or further arouses the officer's suspicions, the officer may lawfully extend the scope and duration of the stop.

*Alexander*, 5 Wn. App. 2d at 160 (quoting *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)).

"[U]nder certain circumstances measures such as handcuffing, secluding, and drawing guns on the suspect may be appropriate to accomplish a *Terry* stop." *State v. Pines*, 17 Wn. App. 2d 483, 491, 487 P.3d 196 (2021). While "[t]here is no bright line standard for determining the degree of invasive force which may convert an investigative stop into an arrest," we analyze the degree of invasive force used against the officers' reasonable fears for their own safety. *State v. Belieu*, 112 Wn.2d 587, 599, 773 P.2d 46 (1989). Reasonable fear must be "based on 'particular facts' from which reasonable inferences of danger may be drawn." *Id.* (quoting *Sibron v. New*

6

*York*, 392 U.S. 40, 64, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)).  The officers must employ the least intrusive investigative method reasonably available to them.  *Id*.  "The force used should bear some reasonable proportionate relationship to the threat apprehended by the officers."  *Id*.

A.     *Removing Dummer From the Car and Placing Him in Handcuffs*

"An investigative stop is not transformed into an arrest merely because an officer orders a suspect out of a car."  *Id.* at 594.

Here, we conclude that the deputies had reasonable safety concerns to justify ordering Dummer to show his hands, removing Dummer from the car when he failed to comply, and handcuffing Dummer upon further noncompliance.  The findings show that the deputies had reasonable articulable suspicions that the car was possibly stolen, that the car had a cancelled license plate, and that Dummer was possibly under the influence of drugs.  A reasonable person would have concerns for their safety given the unpredictability of waking a stranger who had likely ingested drugs—possibly heroin or methamphetamine—while they are passed out in the driver seat of a likely stolen vehicle. Both deputies' experiences demonstrated their belief that stolen vehicle situations present high-risk situations.

Dummer stresses that because there were two deputies present and Dummer was passed out, the circumstances undercut any safety concerns.  But a reasonable inference is that Dummer passed out due to drug usage, and that upon waking he might still be under the influence of drugs and in control of the possibly stolen car, which would present a safety risk to the deputies and the public.

After momentarily showing his hands, Dummer then reached down towards the car seat and the ignition despite commands from the deputies to stop.  Dummer's decision to ultimately

ignore the deputies' command to show his hands and reach under his seat and towards the ignition created a reasonable inference of danger that Dummer could be reaching for a weapon. Under these circumstances, the deputies were justified in grabbing Dummer's arms and removing Dummer from the car. Dummer continued to resist as the deputies removed him from the car. Thus, continued safety considerations justified handcuffing Dummer as part of the *Terry* detention.

B.      *The Frisk*

Dummer argues that the officers exceeded the scope of a proper protective frisk for weapons as "the deputies almost immediately went into Mr. Dummer's clothing and pockets, despite the fact that the investigation at that point was for physical control and a potential [charge] of possession of a stolen car." Br. of Appellant at 15. Dummer emphasizes that the officers had no reason to believe he was armed. We disagree.

"While *Terry* does not authorize a search for evidence of a crime, officers are allowed to make a brief, nonintrusive search for weapons if, after a lawful Terry stop, 'a reasonable safety concern exists to justify the protective frisk for weapons' so long as the search goes no further than necessary for protective purposes." *State v. Day*, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007) (quoting *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002)). This brief search based on safety considerations is referred to as a *Terry* frisk. *Id.* at 895. "For a permissible *Terry* stop the State must show that (1) the initial stop is legitimate; (2) a reasonable safety concern exists to justify the protective frisk for weapons; and (3) the scope of the frisk is limited to the protective purposes." *Duncan*, 146 Wn.2d at 172.

*Terry* justifies protective frisks only when the officer can point to "'specific and articulable facts' that create an objective, reasonable belief that the suspect is armed and dangerous." *State v. Lennon*, 94 Wn. App. 573, 580, 976 P.2d 121 (1999) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "Generally courts are reluctant to second-guess the judgment of officers in the field and will uphold the validity of most frisks that arise from a 'founded suspicion' that is neither arbitrary nor harassing." *Id.* (quoting *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993)).

Here, there were specific articulable facts that created an objective, reasonable belief that Dummer was armed and dangerous. Dummer did not comply with the command to show his hands, but attempted to reach under his seat. Dummer further resisted the officers attempt to remove him from the car and handcuff him. These facts support the belief that Dummer was dangerous.

The deputy's belief that Dummer may have been reaching for a weapon when he reached under his seat supports the conclusion that Dummer may have been armed. Additionally, the deputies' training and experience with stolen car situations suggested that a firearm may have been involved. Under these circumstances, we hold that there were specific and articulable facts that created an objective, reasonable belief that Dummer was armed and dangerous, which justified the search finding the knife. And as to the other evidence discovered during the frisk, Dummer does not make an argument that the deputies' actions as to any specific piece of evidence exceeded the scope of the protective frisk. Thus, the deputies' search was justified under the *Terry* doctrine.

C.       *Search Incident to Arrest for Obstructing a Law Enforcement Officer*

Dummer argues that, by forcibly removing him from the car and handcuffing him, the deputies actually arrested him, rather than merely detaining him under *Terry*.  Dummer further argues that this alleged arrest was not supported by probable cause that he committed any crime and, thus, the search of his person was conducted without authority of law.  We conclude that, even if the deputies' actions in removing Dummer from the car and handcuffing was an arrest rather than a mere *Terry* detention, the arrest was supported by probable cause as Dummer obstructed a law enforcement officer.  And so, the acts of finding the knife and other items were lawful under the search incident to arrest.

The trial court concluded that the deputies' acts did not exceed the scope of a valid *Terry* detention.  But the trial court also concluded,

> The deputies had probable cause to arrest the Defendant for the crime of obstructing a law enforcement officer after the Defendant did not comply with their continued commands for him to stop reaching with his hand and after the Defendant physically resisted the deputies' attempts to remove him from the Honda.

CP at 84.  We agree that the deputies had probable cause to arrest Dummer for obstructing, and so, the search was also justified under the search incident to arrest doctrine.

"A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties."  RCW 9A.76.020(1).  "Obstructing a law enforcement officer is a gross misdemeanor."  RCW 9A.76.020(3).  Generally, "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of an officer."  RCW 10.31.100.

As addressed above, forcibly removing Dummer from the car was justified under *Terry*. Because Dummer refused to comply with the deputies' commands by (1) actively reaching under the seat—where he could have had a weapon and reaching towards the ignition—instead of continuing to show his hands, and (2) resisting the deputies' efforts to remove him from the car and handcuff him instead of peaceably exiting the car, the deputies had probable cause to believe Dummer obstructed a law enforcement officer. Thus, even if we agreed with Dummer that he was actually placed under arrest at the point that he was handcuffed, that arrest was lawful because it was supported by probable cause for obstructing a law enforcement officer. And because the arrest was lawful, the search of Dummer's person incident to that arrest was also lawful. *State v. Brock*, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015) (under the search incident to arrest doctrine, "[T]he arresting officer has authority to search the arrestee's person and his or her personal effects.").

## II. VPA

Dummer also argues that the VPA must be stricken from his judgment and sentence.

Under former RCW 7.68.035 (2018), the VPA could be imposed on indigent defendants. But an amendment to that statute effective on July 1, 2023 "prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3)." *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). And that amendment applies to cases on direct appeal. *Id*.

Here, because Dummer's case is on direct appeal, the amended RCW 7.68.035 applies. The trial court did not expressly find that Dummer was indigent under RCW 10.01.160(3). However, the trial court appeared to find him indigent based on its decision to impose only

mandatory LFOs. Accordingly, the amended statute applies, and we direct the sentencing court to strike the VPA from his judgment and sentence.

## CONCLUSION

We affirm Dummer's convictions, but we remand for the trial court to strike the VPA from his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Cruser, C.J.