[No. 65832-3. En Banc.]

Argued May 27, 1998. Decided October 22, 1998.

THE STATE OF WASHINGTON, *Petitioner*, v. ELLEN J. WALKER, *Respondent*.

SANDERS and JOHNSON, JJ., dissent by separate opinion.

*H. Steward Menefee, Prosecuting Attorney*, and *James G. Baker, Deputy*, for petitioner.

*Jack L. Burtch*, for respondent.

ALEXANDER, J. — The only issue before us is whether the trial court wrongly denied Ellen Walker's (Ellen) motion to suppress evidence obtained in a search of her home to which she voluntarily consented. The Court of Appeals held that the trial court erred in not granting her motion for the reason that Ellen's spouse, who was also present at their home at the time of the search, did not also consent to the search. We disagree with that conclusion and hold that the failure of the police to obtain the consent of Ellen's husband did not vitiate the search as to Ellen. We, therefore, reverse the Court of Appeals and affirm Ellen's conviction.

Ellen's 12-year-old nephew was caught at Hoquiam Middle School with a bag of marijuana. Following a telephone call by school authorities to the Hoquiam Police Department, a police officer was dispatched to the school. The investigating officer, Steve Hierholzer, was told by Ellen's nephew that he lived with Ellen and her husband, that he had obtained the marijuana from their home and that "there was more there at the residence." Verbatim

Report of Proceedings at 9. After the boy was arrested and taken to the Hoquiam Police Department, Ellen was called at her place of work and asked to come to the police station. Upon her arrival, Hierholzer and another officer informed her that they thought they had probable cause to obtain a search warrant authorizing a search of her home. They explained that an alternative for Ellen was to consent to a limited search of her home. Ellen then signed a permission to search form that was presented to her by the officers. It provided as follows:

## PERMISSION TO SEARCH

I, Ellen J. Walker 7-1-62, have been informed by Detective Blodgett and Officer Hierholzer who made proper identification as (an) authorized law enforcement officer(s) of the Hoquiam Police Department of my CONSTITUTIONAL RIGHT not to have a search made of the premises and property owned by me and/or under my care, custody and control, without a search warrant.

Knowing of my lawful right to refuse to consent to such a search, I willingly give my permission to the above named officer(s) to conduct a complete search of the premises and property, including all buildings and vehicles, both inside and outside of the property located at [property address].

The above said officer(s) further have my permission to take from my premises and property, any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation.

This written permission to search without a search warrant is given by me to the above officer(s) voluntarily without any threats or promises of any kind, at 2:30 p.m. on this 1 day of February 1995, at HQPD . . . .

/s/ Ellen Walker

Pl.'s Ex. 1.

The police officers then drove Ellen to her home. Shortly after they arrived at her house but prior to entering it,

Ellen's husband, Gus Walker (Gus), arrived at the premises. Without speaking to Gus, Ellen led Officer Hierholzer to a bedroom she shared with Gus. She then retrieved a bag of marijuana from a closet and handed it to him. Hierholzer then searched the closet himself and found another bag of marijuana.

While the search was being conducted, another officer, Detective Blodgett, informed Gus that Ellen had given them permission to search the home. Although Gus was not asked to consent to a search of the house, he did not voice any objection to the officer's activities. Gus later gave his oral consent to a search of the garage, but no evidence was seized there.

The State charged Ellen and Gus Walker separately with possession of marijuana in excess of 40 grams. RCW 69.50.401. Shortly after the charges were filed, the cases were consolidated for purposes of trial. The defendants then filed a joint motion to suppress the marijuana obtained in the search of their bedroom. Following a hearing on their motion, the trial court entered findings of fact and concluded, therefrom, that although Ellen had voluntarily consented to the search of the house, Gus had not. Consequently, it granted Gus's suppression motion and dismissed the charge against him. It denied Ellen's motion. At a bench trial, Ellen was found guilty of the charge.

The State appealed the trial court's order granting Gus's motion. Ellen appealed the order denying her motion. The Court of Appeals affirmed suppression of the evidence in the case against Gus, but reversed the trial court's order denying Ellen's motion to suppress and remanded with directions to dismiss the charge against her. *State v. Walker*, 86 Wn. App. 857, 941 P.2d 1 (1997), *review granted*, 134 Wn.2d 1006, 954 P.2d 278 (1998). The State sought review of the latter decision contending that the Court of Appeals erred in concluding that the written consent to search that was signed by Ellen and given to the Hoquiam police officers was vitiated by the failure of the police to seek and obtain the consent of her husband who was present at the home at the time it was searched. We granted review.

 Warrantless searches are per se unreasonable unless they fall within an established and well-delineated exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Jacobsen v. City of Seattle*, 98 Wn.2d 668, 672, 658 P.2d 653 (1983). One of the exceptions to the warrant requirement is consent to a search. *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989). The burden, however, is on the State to show that a consent to search was voluntarily given. *State v. Shoemaker*, 85 Wn.2d 207, 210, 533 P.2d 123 (1975). The State must meet three requirements in order to show that a warrantless but consensual search was valid: (1) the consent must be voluntary; (2) the person granting consent must have authority to consent; and (3) the search must not exceed the scope of the consent. *State v. Nedergard*, 51 Wn. App. 304, 308, 753 P.2d 526, *review denied*, 111 Wn.2d 1007 (1988); *see also* Robert F. Utter, *Survey of Washington Search and Seizure Law*, 9 U. PUGET SOUND L. REV. 1, 112 (1985).

The second factor, whether the person granting consent had authority to do so, is the only issue that is in contention here.[1] Clearly, as a cohabitant with common authority over the premises, Ellen had authority to consent to the search and that consent was valid as against an absent, nonconsenting person with whom that authority was shared. *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). The more pertinent question and the one before us is whether her authority to consent to a search evaporated when her cohabitant, Gus, arrived at the premises just before the search was conducted.

The State contended in its petition for review and in

---

[1]Ellen contended at the Court of Appeals that she did not knowingly and voluntarily consent to the search. She also assigned error to certain of the trial court's findings of fact. Although the Court of Appeals held that Ellen consented to the search, it did not address her challenge to the trial court's findings. She did not, however, seek review of the Court of Appeals' decision, nor did she present a brief in response to the State's petition for review. We, therefore, have limited our decision to the issue raised in the State's petition.

argument to this court that the Court of Appeals incorrectly concluded that a consent to search given by an inhabitant of a dwelling is vitiated by the failure of the police to obtain the consent of any cohabitant who was present at the time the consent was obtained. In concluding that the failure of the Hoquiam police to obtain Gus's consent to the search essentially vetoed Ellen's otherwise voluntary consent, the Court of Appeals purported to rely on our decision in *Leach*. In *Leach*, the police obtained consent to search from the defendant's girl friend who had equal control over the business premises where the search was conducted. The record showed that when the officers arrived at the place to be searched (a travel agency), the defendant, Leach, was present. The officers arrested and handcuffed Leach and placed him in a chair while they conducted the search of the premises. When Leach was charged, he moved to suppress the evidence seized in the search, arguing that he had not consented to the search. The trial court denied his motion. On review, the Court of Appeals concluded that the search was invalid, absent Leach's consent to it, and it remanded for an evidentiary hearing to determine if he had consented. This court affirmed the Court of Appeals in *Leach*, concluding that while a person with equal control of a premise may consent to a search in the absence of the defendant, "the police must obtain the consent of a cohabitant who is present and able to object in order to effect a valid warrantless search." *Leach*, 113 Wn.2d at 736.

We can understand how this quote from *Leach*, when viewed out of context (i.e., that the evidence obtained in the search was entered into evidence against the nonconsenting cohabitant), might give some solace to Ellen. It does not, however, avail her here because *Leach* does not stand for the proposition advanced by Ellen. Rather, the case supports the proposition that "[w]here the police have obtained consent to search from an individual possessing, at best, equal control over the premises, that consent remains valid *against* a cohabitant, who also possesses equal control, only while the cohabitant is absent." *Leach*,

113 Wn.2d at 744 (emphasis added). It follows from that opinion that because Ellen and Gus were cohabitants and both present during the search, Ellen's consent to the search was invalid as to Gus. Indeed the Court of Appeals so ruled in the State's appeal from the trial court's order granting Gus's suppression motion and the State did not seek review of that decision here.

■ ■ The dissent asserts that this court squarely answered the question at issue here when we stated in *Leach* that the police must obtain the consent of a cohabitant who is present in order to effect a valid warrantless search. Dissent at 688. The dissent contends that this means that since the Hoquiam Police failed to obtain Gus's consent to the search, it was invalid as to Ellen. Dissent at 688. This conclusion misconstrues our holding in *Leach*. We did not, as the dissent suggests, state there that a search is invalid *as to the person who gave consent*, if that person's cohabitant did not consent to the search or merely kept silent.[2] It does not follow, therefore, that the officers' failure to ask Gus to consent to the search makes Ellen's consent invalid as to her.

We believe, in short, that the Court of Appeals incorrectly extended our holding in *Leach* when it concluded

---

[2]The dissent alleges that "[m]ost commentators also agree failure to obtain the consent of present cohabitants renders the search itself illegal (and not legal as to some and illegal as to others)." Dissent at 690. This assertion is arguable. *See United States v. Donlin*, 982 F.2d 31, 33 (1st Cir. 1992) ("Valid consent may be given by a defendant or a third party with 'common authority' over the premises. Third party consent remains valid even when the defendant specifically objects to it.") (citation omitted); *United States v. Childs*, 944 F.2d 491, 495 (9th Cir. 1991) (holding "the valid consent of a person with common authority will justify the search of a residence *even if the co-occupant is physically present*") (emphasis added); *United States v. Hendrix*, 595 F.2d 883, 885 (D.C. Cir. 1979) (upholding the validity of a warrantless search where the defendant was present and did not consent, but his wife did consent, because the rule developed in *Matlock* did not depend on the defendant's absence); *People v. Sanders*, 904 P.2d 1311, 1313 (Colo. 1995) ("The valid consent of a person with 'common authority' will justify a warrantless search of a residence despite the physical presence of a nonconsenting co-occupant."); *State v. Frame*, 45 Or. App. 723, 609 P.2d 830, 833 (1980) (holding that the consent to search given by the defendant's wife and cohabitant was an effective consent because it was consistent with the rationale set forth in *United States v. Matlock*); 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 8.3(d), at 730-32 (3d ed. 1996) (highlighting the *disagreement* in this area).

that a cohabitant who is present at the time a search is conducted may revoke the other cohabitant's voluntary waiver of his or her Fourth Amendment rights. Such a holding, as we have noted, misinterprets *Leach* and flies in the face of settled law that Fourth Amendment rights are personal rights that cannot be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). We agree, in that regard, with the view expressed by the Court of Appeals in *State v. Jones*, 68 Wn. App. 843, 847, 845 P.2d 1358, *review denied*, 122 Wn.2d 1018, 863 P.2d 1352 (1993), that "one cannot invoke the Fourth Amendment rights of others."

Although we recognize that the Court of Appeals expressed concern that by failing to ask for Gus's permission to search, the police officers denied Ellen an opportunity to revoke her consent based on his response, we believe that view is somewhat patronizing toward Ellen. We should not presume, as did the Court of Appeals, that Ellen would defer to Gus's lack of consent, particularly in light of this record which reveals that Ellen voluntarily signed a consent to search form that fully informed her of her right not to consent to the search. It also discloses that Ellen knew that Gus was at their home when the search was conducted. She did not, however, endeavor to speak to him before taking the police officers to the closet where the controlled substance was found. While we hesitate to draw any conclusions about what Ellen was thinking at that time, it is logical to presume that she felt capable of making up her own mind about whether or not to consent to the search. Although Ellen clearly had rights of privacy under the Fourth Amendment that deserved to be respected, her decision to give up those rights should also be respected.

Ellen's counsel engaged in a *Gunwall*[3] analysis in the brief he presented to the Court of Appeals in support of his argument that Ellen was entitled to heightened protection under article I, section 7 of our state constitution. This argument overlooks our decision in *State v. Mathe*, 102

---

[3]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

Wn.2d 537, 688 P.2d 859 (1984), in which we specifically adopted the federal test for consent that is set forth in *Matlock*. In any case, article I, section 7 provides only that one's private affairs not be disturbed and that a person's home not be invaded without authority of law. Although the Hoquiam police officers were not armed with a search warrant, they had Ellen's freely-given permission to search her home and she cannot be heard to complain, now, that the search was unlawful as to her or that her privacy was disturbed.

## CONCLUSION

In our judgment, the Court of Appeals extended our holding in *Leach* to an extent we did not intend. While our decision in *Leach* supports the notion that one's otherwise voluntary consent to a search is not valid as against a cohabitant of the premises who is present when the search is conducted, it does not support the view that this consent is not valid as against the consenting person.

The Court of Appeals is reversed and Ellen Walker's conviction is affirmed.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN, and TALMADGE, JJ., concur.

SANDERS, J. (dissenting) — The issue is whether this warrantless search of the Walker home violated the Fourth Amendment. The majority concedes it did but will not suppress the fruit of this poisoned tree.

Controlling precedent holds when authorities rely on consent to avoid the warrant requirement, "the police must obtain the consent of a cohabitant who is present and able to object in order to effect a valid warrantless search." *State v. Leach*, 113 Wn.2d 735, 736, 782 P.2d 1035 (1989). But here police failed to obtain the consent of Mr. Walker, a cohabitant who was present and able to object. Accordingly the warrantless search of the Walker home was unconstitu-

tional. In such situations the door, in effect, has multiple locks with each present cohabitant holding one key. But without keys to each lock, the door may not be constitutionally opened.

*State v. Leach* squarely addressed the claimed co-occupant exception to the warrant requirement. Prior to *Leach* we held a warrantless search of a building based on the consent of one co-occupant without the consent of *absent* co-occupants does not offend the constitution. *See State v. Mathe*, 102 Wn.2d 537, 541, 688 P.2d 859 (1984) (adopting *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)). The reciprocal proposition is failure to obtain the consent of a present co-occupant is inadequate to avoid the warrant requirement.

In *Leach* police conducted a warrantless search of a building based on the consent of one co-occupant although the other co-occupant was present when the police arrived to search but he was not asked for consent. The police simply held him to one side and searched anyway.

*Leach* began by noting *Matlock* and *Mathe* had not definitively answered whether the police need to obtain the consent of present co-occupants in order to effect a warrantless search based on the consent of another cohabitant and then noted a split in authority on the answer. *Leach* quoted from the leading text to the effect that one line of authority allows the police to make the search with the consent of only one of the present co-occupants while the other line of authority holds "that the consent of both is required when both are present." *Leach*, 113 Wn.2d at 740 (quoting 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 8.3(d) (3d ed. 1996) (hereinafter "3 LAFAVE, SEARCH AND SEIZURE"). *Leach* then opined that the line of authority requiring consent of both co-occupants " 'has somewhat greater appeal' " (*Leach*, 113 Wn.2d at 740 (quoting 3 LAFAVE, SEARCH AND SEIZURE at 252)), and adhered to the rule that " 'When two or more persons have equal use of a place in which both are present, the consent of one does not normally eliminate the need for the consent

of the other(s) before a search is made . . . .' " *Leach*, 113 Wn.2d at 742 (quoting Lloyd L. Weinreb, *Generalities of the Fourth Amendment*, 42 U. CHI. L. REV. 47, 63 (1974)). Finally, *Leach* squarely answered the question presented: *"We hold the police must obtain the consent of a cohabitant who is present and able to object in order to effect a valid warrantless search." Leach*, 113 Wn.2d at 736 (emphasis added).[4]

Here, the police failed to obtain the consent of Mr. Walker even though he was a cohabitant present and able to object. Under *Leach* the search was invalid. Period.

. The majority, however, seeks to validate this warrantless search without overruling *Leach* or Fourth Amendment jurisprudence. It concedes under *Leach* this search violated the Fourth Amendment *but only as to Mr. Walker.* Majority at 684. But as to Mrs. Walker, the majority admits the fruits of this unconstitutional search into evidence. This reasoning is flawed because under the Fourth Amendment a search is either constitutional or it is not constitutional. If the search is constitutional all evidence discovered is admissible while, on the other hand, "all evidence which is the product of an illegal search or seizure is suppressed." *State v. White*, 97 Wn.2d 92, 101, 640 P.2d 1061 (1982) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). The issue is the constitutionality of the search, not the status of the person who bears the consequences. Here the majority concedes the search was unconstitutional but will not suppress its poisoned fruit.

Not all jurisdictions have followed the approach taken by this court in *Leach*. As the majority notes in its second footnote, some courts have instead found that a search will be constitutional where consent is given by a party with "common authority" over the premises, even though a co-

---

[4]We require the police to get the consent of each present occupant because present occupants possess the highest degree of privacy from state intrusion. This is so because in the case of a present occupant there is a confluence of both privacy of presence (i.e., they are present) and privacy of place (i.e., they are in legal possession of the premises). *See* Lloyd L. Weinreb, *Generalities of the Fourth Amendment*, 42 U. CHI. L. REV. 47, 63 (1974).

occupant is present but has not consented. *United States v. Donlin*, 982 F.2d 31 (1st Cir. 1992); *United States v. Childs*, 944 F.2d 491 (9th Cir. 1991); *United States v. Hendrix*, 595 F.2d 883 (D.C. Cir. 1979); *People v. Sanders*, 904 P.2d 1311 (Colo. 1995); *State v. Frame*, 45 Or. App. 723, 609 P.2d 830 (1980). In each of these cases, *the search in question was found to be constitutional* and the fruits admitted, despite the nonconsent of a co-occupant. *Donlin*, 982 F.2d at 33-34; *Childs*, 944 F.2d at 495; *Hendrix*, 595 F.2d at 885; *Sanders*, 904 P.2d at 1315; *Frame*, 609 P.2d at 833-34. However *Leach* considered relevant court opinions on this matter from other jurisdictions and expressly refused to follow the legal route taken by the court in *Frame*, emphatically stating:

> Where the police have obtained consent to search from an individual possessing, at best, equal control over the premises, that consent remains valid against a cohabitant, who also possesses equal control, only while the cohabitant is absent. However, should the cohabitant be present and able to object, the police must also obtain the cohabitant's consent. *Any other rule exhalts* [sic] *expediency over an individual's Fourth Amendment guaranties*. Accordingly, we refuse to beat a path to the door of exceptions.

*Leach*, 113 Wn.2d at 744 (emphasis added). While this court in *Leach* steadfastly refused to embark upon a journey which would impair constitutional rights, the majority in the instant case teeters in that direction by obscuring the difference between the cases it cites in footnote two and this court's decision in *Leach*. Although the majority acknowledges that the search in the present case was found to be *unconstitutional* (correctly following *Leach*), the majority nevertheless finds the fruit of the search to be *admissible* against Mrs. Walker (citing cases at footnote two for support). The fallacy of this position is that it confuses and commingles two conflicting strands of case law which follow opposing judicial routes. As noted above, in every case cited by the majority in footnote two, the fruits of a search were deemed admissible only after the search was found to be *constitutional*, i.e., distinctions as to admissibility of the

fruits of a particular search against the consenting occupant and the nonconsenting occupant were never drawn. There is no authority for the majority's proposition that the fruits of an *unconstitutional* search should be admitted into evidence. Indeed such a proposition violates one of the founding principles of the Fourth Amendment. *See Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (holding that evidence resulting from an unconstitutional search or seizure must be suppressed).

Most commentators also agree failure to obtain the consent of present cohabitants renders the search itself illegal (and not legal as to some and illegal as to others). *See, e.g.*, Laura L. Silva, *State Constitutional Criminal Adjudication in Washington Since State v. Gunwall: "Articulable, Reasonable and Reasoned" Approach?*, 60 ALB. L. REV. 1871, 1883 n.74 (1997) (*Leach* "held that the police must obtain the consent of a cohabitant who is present and able to object in order to effect a valid warrantless search."); ROBERT E. McBETH, SEARCH AND SEIZURE NOTEBOOK 427 (1991) ("When one of two persons sharing control over certain premises consents to a search of the premises and the other person, having equal or superior control over the premises is present and able to object, police officers may not make a warrantless search of the premises without the consent of such other person.") (citing *State v. Leach*, 113 Wn.2d 735); Gregory S. Fisher, *Search and Seizure, Third-Party Consent: Rethinking Police Conduct and the Fourth Amendment*, 66 WASH. L. REV. 189, 197 (1991) ("The [*Leach*] court held that Armstrong's consent could not validate the search because Leach was present when the police entered.") (citing *Leach*, 113 Wn.2d at 744).

*Leach* is on point and dispositive.

We might also bear in mind the dictates of *Leach* do not present an undue burden for law enforcement. Absent consent from all co-occupants, a warrant provides the necessary lawful authority.

## Other Concerns

Here, the police conducted a warrantless search of a

home without justifying their failure to resort to a neutral magistrate for a warrant. In general we require law enforcement to turn to a neutral magistrate

"so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals . . . . And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home."

*Chimel v. California*, 395 U.S. 752, 761, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969) (quoting *McDonald v. United States*, 335 U.S. 451, 455-56, 69 S. Ct. 191, 93 L. Ed. 153 (1948)). We allow authorities to bypass the neutral magistrate and conduct a warrantless search only " 'where the societal costs of obtaining a warrant, such as danger to law officers of the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.' " *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)) (internal citations omitted). If the warrant rule is to retain its vitality and meaning we must require authorities to obtain a warrant or justify their failure to do so. *See Chimel*, 395 U.S. at 761 (" 'We cannot be true to that constitutional [warrant] requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.' ") (quoting *McDonald*, 335 U.S. at 456). *Cf. Leach*, 113 Wn.2d at 744 (" 'Where the police have ample opportunity to obtain a warrant, we do not look kindly on their failure to do so.' ") (quoting *United States v. Impink*, 728 F.2d 1228, 1231 (9th Cir. 1984)).[5]

Here the State has not offered any justification for fail-

[5]*See also* Gregory S. Fisher, *Search and Seizure, Third-Party Consent: Rethinking Police Conduct and the Fourth Amendment*, 66 WASH. L. REV. 189, 207 (1991) ("*Leach* was correctly decided because the police needlessly circumvented the warrant clause. The government has no justifiable purpose for relying on third

ure to obtain a valid search warrant. There were no exigencies. The search of the Walker home occurred at midday on a weekday. The magistrate was available. There were no concerns of officer safety nor fears of disappearing evidence. During the suppression hearing the State's attorney asked Detective Blodgett, "Why didn't you just get a search warrant in this instance?", to which Detective Blodgett candidly responded, "Primarily because it's time-consuming to get a search warrant." Direct examination of Detective Blodgett, Verbatim Report of Proceedings at 41 (May 12, 1995).

Saving a few minutes is not a valid reason to bypass the warrant requirement. If it is, there is no longer a warrant requirement in Washington because obtaining a warrant always requires some effort. In *Leach* we held the line and explained "we refuse to beat a path to the door of exceptions." *Leach*, 113 Wn.2d at 744. But today the majority opens the door to warrantless invasions of our privacy. The majority sets a dangerous precedent while disregarding existing precedent which protects our liberty. I dissent.

JOHNSON, J., concurs with SANDERS, J.

---

parties' consent when a warrant can be secured."); Lloyd L. Weinreb, *Generalities of the Fourth Amendment, supra*, at 57 ("When a search pursuant to a warrant would be constitutional, a warrant can almost always be obtained. The wise course for the police is not to rely on the consent of a private person unless they must. When the police do not rely on consent, either (1) they could not have obtained a warrant because a constitutional requirement like probable cause was not met; or (2) they could have obtained a warrant but did not; or (3) the constitutional requirements were met, but the police could not obtain a warrant for other reasons, such as the unavailability of a magistrate. In the first two situations, the courts should place a heavy burden of proving consent on the police.").