154 P.3d 318 (2007)
STATE of Washington, Appellant,
v.
Bee XIONG, Respondent.
No. 24553-5-III.
Court of Appeals of Washington, Division 3.
March 27, 2007.
*319 Kevin Michael Korsmo, Attorney at Law, Spokane, WA, for Appellant.
Eric J. Nielsen, Eric Broman, Nielsen Broman & Koch PLLC, Seattle, WA, for Respondent.
BROWN, J.
¶ 1 Officers attempting to serve a warrant mistook Bee Xiong for his brother Kheng Xiong. While sorting out the identification, a protective frisk led to a pipe with drug residue. Bee Xiong was arrested. The search incident to Bee Xiong's arrest led to the State's charge for methamphetamine possession with intent to deliver. The trial court suppressed the evidence, and terminated the case. The State appealed. Because the evidence was seized during a proper investigatory stop, we reverse.

FACTS
¶ 2 Task forces assembled to execute felony arrest warrants for persons in the Spokane area, including Kheng Xiong. Using Kheng Xiong's photo, the officers went to his listed home address and found a van parked there. A deputy marshal misidentified the van's passenger, Bee Xiong, Kheng's brother, as Kheng. When approached, Bee Xiong gave his name to a federal agent but he did not have any identification. Bee Xiong explained Kheng Xiong was his older brother.
¶ 3 The agent handcuffed Bee Xiong, noticing a large bulge in his pocket. Concerned the bulge was a weapon, the agent touched the bulge and felt a hard object. Bee Xiong pulled away so the agent could not feel the object any further and said he did not have any weapons, but did not want to be searched. At this point, the agent was still uncertain of identification. Apparently, the photo used by the officers was similar in appearance to Bee Xiong. The officers attempted to obtain a photo of Bee Xiong in the computer system in an effort to identify their suspect.
¶ 4 During this time, the officers decided to investigate the hard object, suspecting it could be a weapon. Bee Xiong was arrested for possessing a controlled substance when a pipe with drug residue was found. About 10 minutes later, Bee Xiong's mother arrived and identified him. A search incident to Bee Xiong's arrest developed evidence leading to a charge of possession of methamphetamine with intent to deliver.
¶ 5 Bee Xiong moved to suppress the evidence. The court decided the officers should have first identified Bee Xiong, and "that once confirmed he was Bee Xiong, he [should] have been released uncuffed and not patted." Clerk's Papers at 17. The court concluded the officers lacked facts, specific and detailed, that Bee Xiong was armed and dangerous. The court ordered suppression. The State appealed.

ANALYSIS
¶ 6 The issue is whether, considering investigative stop and frisk principles, the trial court erred in granting Bee Xiong's motion to suppress the evidence seized and dismissing the charge against him. We conclude the court erred.
¶ 7 Bee Xiong, in his briefing, assigns error to finding of fact 4, regarding the courts ruling that the initial stop and handcuffing *320 was appropriate. But Bee Xiong did not file for cross review as required under RAP 5.1(d). See State v. Vanderpool, 99 Wash.App. 709, 714, 995 P.2d 104 (2000) (court declined review of allegations raised for the first time in response brief). Therefore, we decline review.
¶ 8 We review suppression orders by independently evaluating the evidence to determine if substantial evidence supports the findings and the findings support the conclusions. State v. Hill, 123 Wash.2d 641, 644-45, 870 P.2d 313 (1994). "[W]here the findings are unchallenged, they are verities on appeal." State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003) (citing Hill, 123 Wash.2d at 644, 870 P.2d 313). We review suppression conclusions de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
¶ 9 Warrantless searches are per se unreasonable but defined exceptions exist. State v. Walker, 136 Wash.2d 678, 682, 965 P.2d 1079 (1998). Our focus is the Terry[1] investigative stop exception. State v. Duncan, 146 Wash.2d 166, 171-72, 43 P.3d 513 (2002). The State has the burden of showing the particular search or seizure in question falls within the exception asserted. Id. at 172, 43 P.3d 513.
¶ 10 In Terry, the court held if an initial stop is justified a police officer may make a reasonable search for weapons without violating the Fourth Amendment, regardless of whether he or she has probable cause to arrest the individual, if the circumstances lead the officer to reasonably believe that his or her safety or the safety of others is at risk. See Terry, 392 U.S. at 20-27, 88 S.Ct. 1868. The Washington Constitution affords greater privacy protection than the Fourth Amendment.
¶ 11 In Washington, the State must show "(1) the initial stop is legitimate; (2) a reasonable safety concern exists to justify the protective frisk for weapons; and (3) the scope of the frisk is limited to the protective purposes." Duncan, 146 Wash.2d at 172, 43 P.3d 513 (citing State v. Collins, 121 Wash.2d 168, 173, 847 P.2d 919 (1993)). Here, it is a verity that the stop was appropriate. The sole issue is if a reasonable safety concern exists justifying the frisk. The court apparently determined the officers conducted a general search rather than a frisk for articulable suspicion of a weapon.
¶ 12 Here, agents were trying to make a felony warrant arrest of Kheng Xiong. While Bee Xiong informed the agents he was not Kheng Xiong, he lacked identification. An agent handcuffing Bee Xiong saw a large bulge in Bee Xiong's pocket. Concerned the bulge was a weapon, the officer touched the bulge and felt a hard object. Bee Xiong suspiciously pulled away so the agent could not feel the object any further. At this point, the agent did not know if his suspect was Bee or Kheng Xiong. Agents testified they feared for their safety, and explained that even a handcuffed suspect is a risk if armed. Further, the handcuffs would eventually have to come off, whether he was ultimately arrested or not.
¶ 13 Given the similarity in appearance between Kheng Xiong and Bee Xiong, the time necessary to clarify their initial identification, Bee Xiong's location at Kheng Xiong's home, the bulge in Bee Xiong's pocket, his reaction when an agent tried to touch it, and the officer's stated safety concerns, the agent was justified in frisking Bee Xiong's pocket. Based on the hardness and shape of the object, the agent was justified in pulling the object out. See State v. Hudson, 124 Wash.2d 107, 113, 874 P.2d 160 (1994) (if a pat-down search is inconclusive and the officer feels an object which might be a weapon, he is entitled to withdraw it for examination).
¶ 14 In sum, given the propriety of the initial stop and the stated need to dispel the agent's safety concerns during the ensuing investigation, the evidence seized incident to Bee Xiong's arrest was incorrectly suppressed under well established principles governing frisks during investigatory stops.
¶ 15 Reversed.
I CONCUR: KULIK, J.
*321 SCHULTHEIS, A.C.J. (dissenting).
¶ 16 The trial court found that Bureau of Alcohol, Tobacco, and Firearms special agent William Ramsey "wondered if" the bulge in Bee Xiong's pants was a weapon and "assumed" it was. Clerk's Papers at 17. The trial court also found a lack of evidence from which Agent Ramsey could reasonably infer that Mr. Xiong was armed and dangerous. The State does not challenge either finding. The court concluded that these were insufficient articulable facts upon which to base a reasonable belief that Mr. Xiong was armed and dangerous.
¶ 17 The State's appeal is based on a superfluous finding that essentially sets forth the trial court's opinion as to what the officers should have done under the circumstances presentedrefrain from searching Mr. Xiong (because the officers were not justified in believing that Mr. Xiong was armed and presently dangerous to the officer or to others), and complete the process of identifying Mr. Xiong, which would have resulted in his release once his identity was confirmed. Because I believe this unnecessary finding is not a legitimate ground for appeal and it has no bearing on the court's ultimate conclusion that there were insufficient articulable facts upon which to base a reasonable belief that Mr. Xiong was armed and dangerous, I must respectfully dissent.
¶ 18 Agent Ramsey never testified that he was fearful or that he believed that Mr. Xiong posed a threat; only that he justified the search for officer safety reasons. He stated that, based on his experience, it is possible for someone to get a weapon while handcuffedeven when the person is handcuffed in the back as Mr. Xiong was restrained. But he did not associate that concern to Mr. Xiong under these circumstances. Spokane Police Sergeant David McCabe testified that he was not "immediately concerned" because Mr. Xiong was handcuffed. Report of Proceedings (RP) at 25 (emphasis added). But he told Agent Ramsey to take the object out of Mr. Xiong's pocket if he felt "anything that could have been a weapon" because he knew that eventually Mr. Xiong would be uncuffed and he did not want Mr. Xiong to have access to any weapons in the future. RP at 25. Agent Ramsey's lack of true concern is highlighted by his leisurely response to the bulge in Mr. Xiong's pocket.
¶ 19 Agent Ramsey testified that Mr. Xiong was immediately handcuffed when he could not produce identification to prove that he was not Kheng Xiong. It was later, when Agent Ramsey and four other officers were deciding how to identify Mr. Xiong, that he saw the "fairly large" bulge that made Mr. Xiong's right front pocket "a little bit bulky." RP at 8
Agent Ramsey asked Mr. Xiong what was in his pocket (although he does not recall Mr. Xiong's response); he touched the bulge and noted that it was hard. After Mr. Xiong pulled away to prevent further contact, Agent Ramsey asked Mr. Xiong whether the pocket contained anything that could hurt Agent Ramsey and whether he could reach into Mr. Xiong's pocket. Mr. Xiong responded that he did not have any weapons and he did not want to be searched. Agent Ramsey then again felt the object in Mr. Xiong's pocket, squeezing a bit harder. He noted it was "definitely a hard object" and concluded it was a "potential weapon." RP at 12. He conferred with the other officers and decided to search Mr. Xiong for weapons.
¶ 20 Thus, Agent Ramsey saw the bulkiness, asked about it, felt it, asked if it was a weapon, asked Mr. Xiong if he could search, felt it again, and discussed it with the other officers on the scene before it was determined that Mr. Xiong would be searched. But he never expressed fear. And his attempts to persuade Mr. Xiong to consent to a search and to reveal the contents of his pockets are also indicative of some uncertainty in the officer's justification to proceed with a search.
¶ 21 Further, the record shows that 10 or 15 minutes after the contraband was found, Mr. Xiong's mother arrived and identified him as Bee Xiong, not Kheng Xiong. Agent Ramsey testified that if Mr. Xiong's mother arrived to identify her son at any time prior to the search, he probably would not have continued the search because, in his words, "my concern partially with the weapon is that *322 he had a felony warrant." RP at 20 (emphasis added).
¶ 22 The trial court correctly ruled that Agent Ramsey's generalized suspicion of wondering if Mr. Xiong had a weapon was insufficient to meet the legal test for a limited weapons search. A weapons frisk may be undertaken if the officer can point to particular facts from which he reasonably inferred that the specific individual to be searched was armed and presently dangerous under the circumstances. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Broadnax, 98 Wash.2d 289, 294-96, 654 P.2d 96, 101 (1982); State v. Hobart, 94 Wash.2d 437, 441, 617 P.2d 429, 431 (1980).
¶ 23 In its oral opinion, the trial court relied on State v. Galbert, 70 Wash.App. 721, 855 P.2d 310 (1993). In Galbert, an officer handcuffed and frisked Mr. Galbert for officer safety reasons while police executed a search warrant. 70 Wash.App. at 722, 855 P.2d 310. Once the officers had the residence secured, the officer returned to frisk Mr. Galbert again. Id. at 723, 855 P.2d 310. As in this case, a lump was detected, which the officer testified could have been an "`extremely small'" gun or some other weapon. Id. at 723 n. 1, 855 P.2d 310. Also as in this case, the officer testified that some persons have been able to reach their pockets when handcuffed. Id. at 724, 855 P.2d 310.
¶ 24 Division One of this court held that because Mr. Galbert was restrained and there was no indication that he made any gestures or threats, the State could not show that he was presently dangerous. Id. at 725, 855 P.2d 310. Significantly the trial court made no finding that Mr. Galbert posed a threat to the officer. Id. The same is true here. Since there was no evidence that Mr. Galbert could reach his pocket, or that he made any attempt to do so, any safety concern based on the fear that he would attempt to access a weapon in his pocket lacked an objective basis and was therefore unreasonable. Id. at 726, 855 P.2d 310. Moreover, here, even if a safety concern were justifiable, the only evidence dealt with the future, not with present dangerousness.
¶ 25 The trial court's reliance on Galbert was proper. The State failed to show that the search fell within an exception to the warrant requirement. I would therefore affirm.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).