IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53203-4-II |
| Respondent, | |
| v. | |
| JOHN PHI TRUONG, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — John Phi Truong appeals his convictions for unlawful possession of a firearm and unlawful possession of a controlled substance—methamphetamine with intent to deliver, with a firearm enhancement.  For the first time on appeal, Truong argues that his conviction was based on unlawfully seized evidence.  Truong also argues that he received ineffective assistance of counsel for failing to move to suppress the alleged unlawfully seized evidence.  In his Statement of Additional Grounds (SAG) for Review, Truong asserts that the evidence was insufficient to support the jury's verdict and that his sentence violates double jeopardy.

We do not consider Truong's unlawfully seized evidence argument raised for the first time on appeal, and the record on appeal does not support his ineffective assistance of counsel argument.  Moreover, we reject the arguments raised in the SAG.  Consequently, we affirm.

FACTS

In August 2018, law enforcement officers had reason to believe that John Phi Truong was living at his mother's home.  Truong's mother's home was a single-family dwelling with a two-

car garage and driveway that faced the street. The garage had been converted into a makeshift bedroom by adding a bed, heater, and floor coverings. Although the garage was attached to the house, it was accessible only from the exterior of the garage, either through a standard size door on the side or through a roll-up style vehicle entry door in the front.

On August 23, Torey Petersen came to Truong's garage to obtain and use heroin. Truong's girlfriend, Lashaia Avila, was in the garage when Petersen arrived.[1] Truong, Avila, and Petersen used drugs together and spent the night in the garage. The next morning, Truong became irritated when he discovered some of his drugs were missing. According to Petersen, Truong produced a black revolver and began pacing back and forth, saying, "[W]e're going to get to the bottom of [this]." VRP at 93. In fear for his personal safety, Petersen called and sent text messages to his mother, explaining that he was uncomfortable and that she needed to come and take him home. Petersen's mother called law enforcement. Eventually, Petersen was able to leave the garage despite Truong's insistence that he stay.

Officers from the Longview Police Department and the Department of Corrections (DOC) arrived on the scene in response to Petersen's mother's call. Once there, they formed "a team." Verbatim Report of Proceedings (VRP) at 36. The Longview police officers understood that the house was the address used by a DOC client, and that the DOC has different roles and responsibilities than police officers in terms of entering a residence. The DOC officers determined they would go into the residence and apprehend Truong.

DOC officers obtained permission from Truong's mother to search the residence. DOC officers completed a search of the house but did not find Truong inside. Hearing movement

---

[1] At trial, Avila testified that she alone resided in the Truong garage on the day of the search.

coming from inside of the garage, a group of DOC and Longview police officers assembled on the driveway in front of the garage's roll-up door. The garage door began to go up and down, partially opening, before it finally opened all the way and Truong appeared.[2] Truong exited the garage, sprinted across the driveway and collided with a DOC officer. Truong was apprehended and arrested in the driveway by DOC officers. DOC officers found a scale with what appeared to be drug residue on Truong's person.

The Longview police did not have a warrant to search the garage, however there is evidence in the record that Truong's mother gave officers permission to search the residence. DOC officers began to search the garage under authority of RCW 9.94A.631(1).[3] When DOC officers entered the garage to begin their search, Longview Police Department Corporal Danielle Jenkins positioned herself on the corner of the garage directly near the garage entryway. Corporal Jenkins, acting on information that there was a bag inside of the garage that contained evidence, peered into the garage without actually entering. Jenkins observed a bag hanging from the rafters and she notified DOC of the bag's presence. DOC officers retrieved the bag from the rafters. Jenkins saw "some contents" of the bag and told DOC officers to "hold onto" the bag, and that she would obtain a search warrant for it. VRP at 38.

---

[2] The record is inconclusive as to who opened the garage.

[3] DOC can conduct a warrantless search of a probationer's "person, residence, automobile, or other personal property" based on mere "reasonable cause to believe that [the] offender has violated a condition or requirement of [his/her] sentence." RCW 9.94A.631(1). In this case, DOC believed that Truong violated a condition of his community custody by failing to notify a change of address. Here, DOC had an outstanding warrant for Truong based on an alleged failure to update his address.

The bag located in the rafters was a lunch box style, dark colored container with a zippered lid. Jenkins and other officers of the Longview Police Department obtained a warrant, opened the bag, and discovered a safe inside. Officers forcibly opened the safe. Inside the safe, officers discovered a black revolver, ammunition, methamphetamine, heroin, drug paraphernalia, and cash, along with documents with Avila's name on them.

Truong was charged by information with one count each of unlawful possession of a controlled substance with intent to deliver—methamphetamine,[4] unlawful possession of a controlled substance with intent to deliver—heroin[5] (each with school zone and firearm enhancements)[6], first degree unlawful possession of a firearm,[7] and harassment.[8]

The case proceeded to a jury trial. At trial, Truong's attorney neither challenged the search warrant, nor moved to suppress the evidence located in the bag. A jury found Truong committed the crimes of possession with intent to deliver methamphetamine, with school zone and firearm enhancements, and first degree unlawful possession of a firearm.[9] Truong was sentenced to 180 months of total confinement. Truong appeals his conviction, judgment and sentence.

---

[4] RCW 69.50.401(1), 401(2)(b).

[5] RCW 69.50.401(1).

[6] RCW 69.50.435(1); RCW 9.94A.533, .825.

[7] RCW 9.41.040(1)(a).

[8] The jury found Truong not guilty of harassment.

[9] The record reflects, without explanation, that the charge of unlawful possession of a controlled substance with intent to deliver—heroin, was not submitted to the jury.

ANALYSIS

I. SEARCH AND SEIZURE

For the first time on appeal, Truong argues that the State seized evidence from the garage in violation of his constitutional rights. Specifically, Truong argues that Corporal Jenkins conducted an unlawful, warrantless search of his home, and that the fruit of that warrantless search was used to convict him.

The State argues that Truong waived his right to appeal because he did not move to suppress this evidence at trial and the record is not sufficiently developed for our review. The State argues that the record is not sufficient for us to determine whether the error is manifest because we cannot determine whether the warrantless search was allegedly unreasonable. Alternatively, the State argues that if it was a warrantless search, one of a number of exceptions apply.

We agree with State that this record is insufficient for us to decide the merits of Truong's argument, thus we do not consider it.

A. *Unpreserved Challenge*

This court will generally not consider errors raised for the first time on appeal unless a defendant shows a "manifest error affecting a constitutional right." RAP 2.5(a)(3). We review constitutional issues de novo. *State v. Fenwick*, 164 Wn. App. 392, 398, 264 P.3d 284 (2011).

An error is manifest when a defendant makes a plausible showing that the error had practical and identifiable consequences in the trial. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). An error cannot be manifest where the record is not sufficient for a reviewing court to decide the merits of the alleged error. *O'Hara*, 167 Wn.2d at 99. In other words, a defendant

cannot show prejudice and the error is not manifest where the record does not contain all the facts necessary to adjudicate the alleged error. *Fenwick*, 164 Wn. App. at 405.

### 1. *Warrantless Search*

Both the United States and Washington constitutions provide a right to be free from unlawful searches. WASH CONST. art. I, § 7; U.S. CONST. amends. IV; XIV. When the government "'physically occupie[s] private property for the purpose of obtaining information,'" that is a "'"search' within the meaning of the Fourth Amendment.'" *U.S. v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012) (alteration in original) (quoting *U.S. v. Jones*, 565 U.S. 400, 404, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012)). Searches and seizures made without a warrant are per se unreasonable, unless an exception applies. *State v. Simpson*, 95 Wn.2d 170, 188, 622 P.2d 1199 (1980) (plurality opinion).[10]

There is no dispute that Corporal Jenkins did not have a warrant to search the garage. The question is whether the record is sufficient for us to determine whether her conduct constituted a search, and if so, whether an exception to the warrant requirement applies. We hold that the record is insufficiently developed to allow us to decide the merits of Truong's argument, thus, Truong cannot show manifest constitutional error and his claim fails.

---

[10] Truong argues that the burden is on the State to demonstrate that an exception to the warrant requirement applies, but because this is a review of an unpreserved error and not a motion to suppress, Truong bears the burden to show manifest constitutional error, including whether this record is sufficient for this court to decide the merits of his alleged issue. *See O'Hara*, 167 Wn.2d at 98; RAP 2.5.

a. *Consent*

The State argues that the record is insufficient to determine the scope of any limitations of the consent Truong's mother gave to law enforcement to search the residence. Truong argues that his mother did not have legal authority to give third party consent to search his garage because he was present, and he did not give his consent, and so the scope of whatever consent was obtained from Truong's mother necessarily could not include his garage. We agree with the State.

Consent to a search is an exception to the warrant requirement. *State v. Walker*, 136 Wn.2d 678, 682, 965 P.2d 1079 (1998). A host or third party who has dominion and control over the premises may consent to a search. *State v. Thang*, 145 Wn.2d 630, 638, 41 P.3d 1159 (2002). Persons who possess common authority can give consent over a premises in the absence of a nonconsenting individual. *State v Thompson*, 151 Wn.2d 793, 803-04, 92 P.2d 228 (2004). If the cohabitant is present and able to object, the police must also obtain the cohabitant's consent. *State v. Leach*, 113 Wn.2d 735, 744, 782 P.2d 1035 (1989). Landlords and tenants do not have common authority if only the tenant is in possession of the property. *State v. Mathe*, 102 Wn.2d 537, 544, 688 P.2d 859 (1984). A temporary or overnight guest does not have standing to challenge a search. *State v. Boot*, 81 Wn. App. 546, 551, 915 P.2d 592 (1996).

Here, the facts are too inconclusive for us to decide whether police officers had valid consent to search the garage. Although the officers obtained Truong's mother's consent to search the residence—and the facts do not suggest they obtained Truong's consent—the facts are inconclusive as to what authority over the garage Truong actually possessed. For example, Avila, who was also present, testified that she alone lived in the garage. Officers testified that

they believed that Truong lived at the address, but the record is unclear what authority, apparent or actual, Truong's mother had to give consent to search the garage. As a result, Truong fails to show prejudice on the grounds that the State did not obtain valid consent to search the garage.

b. *Curtilage*

The State argues that Corporal Jenkins was "lawfully on the curtilage of the Truong residence because she was investigating allegations of felony harassment involving a firearm." Br. of Resp't at 10. Truong argues that Corporal Jenkins was standing in an area of curtilage that was not impliedly open to the public. We hold that the record is insufficiently developed to determine whether Corporal Jenkins was standing in an area not open to the public.

The home is generally viewed as "the area most strongly protected by the constitution." *State v.* Ross, 141 Wn.2d 304, 312, 4 P.3d 130 (2000) (plurality opinion). Curtilage "is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *U.S. v. Johnson*, 256 F.3d 895, 912 (9th Cir. 2001). "The presence of an officer within the curtilage of a residence does not automatically amount to an unconstitutional invasion of privacy. Rather, it must be determined under the facts of each case just how private the particular observation point actually was." *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981). An officer's entry onto curtilage impliedly open to the public "such as a driveway, walkway, or access route leading to the residence" is not a search. *State v. Hoke*, 72 Wn. App. 869, 874, 866 P.2d 670 (1994). When an officer makes a "substantial and unreasonable departure" from curtilage impliedly open to the public, that departure is deemed to be a violation of a constitutionally protected expectation of privacy. *Hoke*, 72 Wn. App. at 874.

Here, the facts are too inconclusive for us to determine whether Corporal Jenkins was on curtilage impliedly open to the public or whether she exceeded the scope of what was impliedly open to the public. The record on appeal shows only that Corporal Jenkins was part of the "team" that formed at the beginning of the encounter, and stood close to the open garage roll-up door when she observed the bag. Without more, we cannot resolve whether that vantage point was impliedly open to the public or not, and "just how private the particular observation point actually was." *Seagull*, 95 Wn.2d at 902.

c. *Independent Source*

"Under the independent source exception, evidence tainted by unlawful governmental action is not subject to suppression under the exclusionary rule, provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action." *State v. Gaines*, 154 Wn.2d 711, 718, 116 P.3d 993 (2005).

Jenkins told DOC officers that there was a bag containing suspected evidence in the rafters of the garage. But there is no evidence as to whether King, the officer who ultimately seized the bag, heard Jenkins's statement about the bag or whether he had spotted the bag on his own accord independent of Jenkins's conduct. Without evidence to conclude one way or another, we cannot hold that the bag would be subject to the independent source exception to the exclusionary rule.

d. *DOC's Authority To Make a Warrantless Search*

The State argues that it had the authority to search Truong's garage by assisting DOC under their lawful authority to perform a warrantless search. Truong argues that DOC did not

enlist her aid and that Jenkins conducted a search on her own accord. The record is insufficiently developed to determine this issue.

Probationers and parolees have a diminished right to privacy under the Fourth Amendment and article 1, section 7 of the Washington Constitution. *State v. Lucas*, 56 Wn.App. 236, 239-40, 783 P.2d 121 (1989), *review denied*, 114 Wn.2d 1009, 790 P.2d 167 (1990). The government can search a probationer or parolee or his residence without a warrant when the probationer or parolee is subject to a provision authorizing such a search, and when the government has probable cause to believe that the probationer or parolee is the resident of the house to be searched. *United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013).

RCW 9.94A.631 allows DOC to perform a warrantless search of a probationer's person, property, and residence upon "reasonable cause" that probation conditions have been violated. The Ninth Circuit has upheld RCW 9.94A.631 as consistent with the Fourth Amendment. *United States v. Conway*, 122 F.3d 841, 842-43 (9th Cir.1997), *cert. denied*, 522 U.S. 1065, 118 S. Ct. 730, 139 L. Ed. 2d 668 (1998). When a DOC officer is justified to make a warrantless search, they may enlist the aid of police officers in performing that duty. *State v. Simms*, 10 Wn. App. 75, 86, 516 P.2d 1088 (1973).

Here, the facts are unclear as to whether DOC did in fact "enlist the aid of the police officers," and if so, the extent of the aid requested. Corporal Jenkins testified that officers from Longview Police Department and DOC formed a "team." The State did not elicit any evidence clarifying what assistance DOC officers may have enlisted. Notably absent is any testimony from DOC officer King, who actually seized the bag. This record is simply too lacking in detail

10

to conclude whether Corporal Jenkins was acting in concert with DOC when she looked into the garage.

In conclusion, because Truong failed to request a CrR 3.6 suppression hearing, the State was unable to fully develop a record regarding the propriety of the search. The record before us does not show that the trial court would have granted Truong's motion to suppress, and so Truong cannot show prejudice. *See Fenwick*, 164 Wn. App. at 405. Because Truong fails to show a manifest error affecting a constitutional right, he cannot raise the admissibility of the fruits of the warrantless search for the first time on appeal. RAP 2.5(a).[11]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Truong argues that his attorney's failure to move to suppress the evidence obtained by Jenkins's alleged search constitutes ineffective assistance of counsel. Truong's argument fails because the record does not clearly show that the evidence was erroneously admitted and the record is also devoid of counsel's reasons for failing to object.

To establish a claim of ineffective assistance of counsel, a defendant is required to show both deficient performance and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). There is a strong presumption that counsel's representation was competent. *State v. Hassan*, 151 Wn. App. 209, 211, 211 P.3d 441, 442

---

[11] The State also argues that "nowhere in the record does it say that Truong was on active DOC supervision at the time of the search." Br. of Resp't at 5. Truong concedes that the evidence regarding whether Truong was on DOC supervision is "ambiguous." Reply Br. of Appellant at 5. This ambiguity contributes to this court's inability to adjudicate the legality of the warrantless search.

(2009). This presumption is rebuttable when there is "no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 128, 130, 101 P.3d 80 (2004).[12] On direct appeal, we will not consider matters outside the record, and where the record on appeal does not contain evidence as to counsel's strategic or tactical decisions for failing to object, the appropriate method of review is a personal restraint petition. *State v. Linville*, 191 Wn.2d 513, 524-25, 423 P.3d 842, 847 (2018).

Here, the record is insufficient to determine whether counsel performed deficiently. The record is not sufficient for us to determine that the evidence should have been excluded, and there is no evidence in the record as to counsel's strategic or tactical decisions regarding this issue. We also cannot conclude that there was "no conceivable legitimate tactic explaining counsel's performance," because the record is not conclusive as to whether the evidence was erroneously admitted. *Reichenbach*, 153 Wn. 2d at 130. Consequently, Truong's ineffective assistance of counsel claim fails.

### III. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his SAG, Truong argues that his conviction is not supported by sufficient evidence. Specifically, Truong argues that the evidence does not support that he was in possession of the firearm for either the unlawful possession of a firearm conviction or the firearm sentencing enhancement on his possession conviction. Separately, Truong argues that a firearm special verdict finding amounts to double jeopardy for double counting. We disagree.

---

[12] In *Reichenbach*, the record showed that a search warrant was invalid at the time of its execution, and that this argument was available to trial counsel. 153 Wn.2d at 131.

A.      *Sufficiency of the Evidence*

Truong disputes that sufficient evidence exists to support his firearm conviction or the firearm sentencing enhancement.  We disagree.

Sufficient evidence supports a jury verdict if a rational trier of fact viewing the evidence in the light most favorable to the State could find each element proved beyond a reasonable doubt.  *State v. Raleigh*, 157 Wn. App. 728, 736, 238 P.3d 1211 (2010).  An appellant's challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences drawn therefrom.  *Raleigh*, 157 Wn. App. at 736.  "Circumstantial evidence and direct evidence are equally reliable" and "[c]redibility determinations are for the trier of fact and are not subject to review."  *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).  We defer to the trier of fact on conflicting testimony, credibility, and the persuasiveness of the evidence.  *Raleigh*, 157 Wn.App. at 736-37.

Constructive possession is established where the defendant exercised dominion and control over the item in question.  *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).  The ability to immediately take actual possession of an item can establish dominion and control.  *State v. Listoe*, 15 Wn. App.2d 308, 326-27, 475 P.3d 534 (2020).  For purposes of weapons enhancements, a person is "armed" if the weapon is "'easily accessible and readily available for use' and there was a nexus or connection between the defendant, the crime, and the weapon."  *State v. Eckenrode*, 159 Wn.2d 488, 493, 150 P.3d 1116 (2007) (plurality opinion) (quoting *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993)).

Here, Petersen testified at trial that Truong did actually possess the firearm in question when he was pacing around the garage in a menacing manner the morning of his arrest.  Even

disregarding any testimony about the safe, Petersen's testimony about Truong's possession of the gun alone is sufficient evidence of both the unlawful possession of a firearm charge and the firearm sentencing enhancement.

B.      *Double Jeopardy*

Truong's contention that the trial court erred when it calculated his base offense level under RCW 9.94A.517 for being armed with a deadly weapon while also adding a firearm enhancement under RCW 9.94A.533(3)(b) is without merit.[13]

The law of double jeopardy with respect to the federal sentencing scheme is instructive. "[I]mpermissible double counting . . . occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines." *United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993). "If, on the other hand, it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level." *Reese*, 2 F.3d at 895.

Here, it was possible for Truong to be assigned the base offense level he received by being armed with a deadly weapon other than a firearm. Therefore, the fact that the deadly weapon he possessed happened to be a firearm would be grounds for a proper sentence

---

[13] Truong cites RCW 9.94A.517, but it appears he meant to cite RCW 9.94A.518, which includes Table 4, and provides for an increase in the seriousness level of drug offenses when a jury returns a deadly weapon special verdict in connection with the drug offense conviction. By definition, all firearms are deadly weapons. *State v. McGrew*, 156 Wn. App. 546, 560, 234 P.3d 268 (2010).

enhancement and would not constitute a form of double jeopardy for double counting. Truong's claim of double jeopardy fails.

CONCLUSION

In conclusion, Truong's unpreserved challenge cannot be raised because he fails to show the alleged error is manifest. We hold that Truong has failed to show on this record that he received ineffective assistance of counsel. Regarding Truong's SAG, we hold that sufficient evidence supports the jury's verdict, and that Truong's judgment and sentence does not violate the prohibition against double jeopardy. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Glasgow, J.